582 A.2d 376

**COMMONWEALTH of Pennsylvania**

v.

**David Phillip NOCERO, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 17, 1990.

Filed Nov. 16, 1990.

Ray H. Scott, Clarion, for appellant.

William M. Kern, Dist. Atty., Clarion, for the Com., appellee.

Before OLSZEWSKI, KELLY and BROSKY, JJ.

BROSKY, Judge.

This is an appeal *nunc pro tunc* from the judgment of sentence entered by the trial court following appellant's conviction for institutional vandalism.[1]

Appellant presents the following questions for review: (1) whether the trial court erred in prohibiting appellant from cross-examining the arresting police officer with regard to a similar incident of vandalism at Clarion University; (2) whether the trial court erred in failing to award appellant a new trial on the basis of after-discovered evidence; and (3) whether the trial court erred in failing to grant appellant's motion to arrest judgment where another individual subsequently admitted to committing the crime. For the reasons set forth below, we affirm the judgment of sentence.

The relevant facts of this case are as follows. On October 7, 1987, appellant, David Nocero, and a friend entered a student lounge located in one of the dormitories on the Clarion University Campus. In the lounge, Nocero and his companion encountered Elise Ditson, another Clarion student. After blowing cigar smoke into Ditson's face, the boys left the lounge area. Later that evening, Nocero, his friend, and a third boy returned to the area outside of the student lounge. Ditson observed the three boys standing near a water fountain which was located outside of the student lounge. After hearing a scraping sound, Ditson noticed that the water fountain was pulled away from the wall and that one of the boys, later identified as Jeffrey

---

1. 18 Pa.C.S.A. § 3307(a)(3). Although appellant was also charged with criminal mischief, *see* 18 Pa.C.S.A. § 3304(a)(1), it was determined that the latter offense merged for the purpose of trial. Thus, appellant was only tried and convicted with regard to the institutional vandalism offense.

Scott Henry, was kneeling by the base of the water fountain while the others watched and laughed. According to Ditson, the boys pulled the water fountain away from the wall while Henry disconnected or broke the water line. As a result of the broken line, water flooded into the hallway and the elevator shaft of the dormitory. Following the commission of this destructive act, Nocero and his friends left the building.

Nocero was subsequently convicted by a jury on October 7, 1988. Post-trial motions were timely filed with the trial court, but were denied. Appellant was then sentenced on January 24, 1989. No direct appeal was filed on appellant's behalf at this time. On August 28, 1989, appellant filed a petition for post-conviction relief under the Post Conviction Hearing Act.[2] After holding a hearing on appellant's petition, the trial court entered an order on April 4, 1990,[3] which reinstated appellant's right of direct appeal from the judgment of sentence. In accordance with this order, appellant timely filed a *nunc pro tunc* appeal with this court.

Appellant first argues that the trial court erred in prohibiting defense counsel from cross-examining one of the arresting officers with regard to another similar act of vandalism which occurred in the same dormitory two days after the incident for which appellant was convicted. In reviewing this issue, we observe that

'[t]he trial judges of this Commonwealth exercise broad powers while presiding at the trial of cases assigned to them. These powers include ruling on the admission or exclusion of evidence and controlling the scope of examination or cross-examination of witnesses. Such

---

**2.** The Post Conviction Hearing Act (PCHA) was subsequently amended by the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541–9551. Because the new act went into effect on April 13, 1988, appellant's petition should have been brought under the PCRA, rather than the PCHA.

**3.** We note that the order reinstating appellant's appellate rights is dated April 4, 1988, but was docketed on April 6, 1990. In view of the fact that the order was entered during appellant's PCRA hearing on April 4, 1990, we assume that the trial court intended the order to be dated for the year 1990 rather than the year 1988.

matters are committed to the sound discretion of the trial judge.' ... *Commonwealth v. Pittman*, 320 Pa. Super. 166, 172–173, 466 A.2d 1370, 1373 (1983) (citation omitted). Decisions regarding such matters will not be reversed on appeal absent a clear abuse of discretion. *Commonwealth v. Sisco*, 484 Pa. 85, 398 A.2d 955 (1979); *Commonwealth v. Jackson*, 336 Pa.Super. 609, 486 A.2d 431 (1984).

*Commonwealth v. Grove*, 363 Pa.Super. 328, 332–333, 526 A.2d 369, 371–372 (1987), *allocatur denied*, 517 Pa. 630, 539 A.2d 810 (1987). We shall address appellant's arguments with this standard in mind.

In support of his argument, appellant relies on the fact that the second incident of vandalism, which Scott Henry admitted to committing,[4] also involved a broken water line to a water fountain that was located in the same dormitory. In addition, appellant avers that he planned to introduce evidence to the effect that he was not in Clarion when the second offense was committed. Essentially, appellant argues that because of the similar nature of the incidents, and because he was not present at the time the second offense was committed, it was unlikely that he was the perpetrator of the first incident. We find appellant's reasoning to be erroneous, however.

The general rule in Pennsylvania is that "evidence of distinct crimes are not admissible.... However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant...." *Commonwealth v. Lark*, 518 Pa. 290, 302, 543 A.2d 491, 497 (1988). Thus, evidence of other crimes may be introduced to prove:

(1) motive;

(2) intent;

(3) absence of mistake or accident;

---

**4.** Contrary to appellant's belief, Scott Henry testified that he did not commit the second incident, but merely accepted responsibility for committing the crime. *See* N.T., 11/7/88, at pp. 9–10.

(4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or

(5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed [or in this case, that the accused did not commit] the other.

*Lark*, 518 Pa. at 303, 543 A.2d at 497. *See also, Commonwealth v. Boyle*, 470 Pa. 343, 359, 368 A.2d 661, 669 (1977) and *Commonwealth v. Smith*, 502 Pa. 600, 609, 467 A.2d 1120, 1125 (1983), for the proposition that evidence of other crimes or bad acts is admissible to establish that another person or persons had the requisite motive or were engaged in a common plan, scheme or design to commit the offense for which the defendant was accused. *See also*, L. Packel & A. Poulin, *Pennsylvania Evidence* § 405.2 (1987). In reviewing the above exceptions to the general rule, it is evident that the first four exceptions are unrelated to the issue in this case. Thus, our analysis must focus on whether there is such a logical connection between the crimes that proof of one will naturally tend to show that the same person committed the other.

■ In ascertaining the identity of the perpetrator of the offense, the Supreme Court has recognized that the evidence of the other like crimes must be

*so nearly identical in method* as to earmark them as the handiwork of the accused. Here *much more is demanded than the mere repeated commission of crimes of the same class*, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a *signature* .... [Moreover], '[t]here must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others.'

*Commonwealth v. Bryant*, 515 Pa. 473, 478, 530 A.2d 83, 86 (1987) (emphasis in original), citing C. McCormick, *Evi-*

*dence* § 190 (2d ed. 1972) and quoting *Commonwealth v. Morris,* 493 Pa. 164, 176, 425 A.2d 715, 720–721 (1981). In addition, the Supreme Court has indicated that remoteness is a factor which must also be considered in determining the similarity of the crimes. *See Commonwealth v. Clayton,* 506 Pa. 24, 33, 483 A.2d 1345, 1350 (1984), appeal after remand, 516 Pa. 263, 532 A.2d 385 (1987), *cert. denied,* 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988). In reviewing the above authorities, we therefore find the following factors to be relevant in determining whether evidence of the other uncharged offense or bad act is admissible: (1) the time lapse between the commission of the two crimes; and (2) the resemblance between the methodologies of the two crimes.

Application of the first factor to the present case reveals that the crimes occurred within two days of each other. This court has previously held that where two separate crimes are committed within one hour in the same geographic area, evidence of the uncharged crime is admissible. *See Commonwealth v. Middleton,* 379 Pa.Super. 502, 509–510, 550 A.2d 561, 564–565 (1988). However, where there is a time lapse of several years or months between the time that the offenses were committed, then evidence of the other crime has been held to be inadmissible. *See Commonwealth v. Campbell,* 342 Pa.Super. 438, 445, 493 A.2d 101, 105 (1985) and *Commonwealth v. Bryant, supra.* Unfortunately, we have been unable to discover a case involving a time lapse of two days. Given the facts present in this case, we believe that the lapse of two days between the commission of the first and second offenses was not such a lengthy period of time as to render evidence of the second offense inadmissible.

In addition to the time factor, we must also evaluate the methodologies used in the commission of the two crimes. Both of the crimes in this case involved the disconnection of a water line from the base of a water fountain. As stated by the trial court in its opinion, "ripping a water fountain from its base is not such a unique type of vandal-

ism that the jury could infer [that] the same person did both acts. To this Court's knowledge[,] there is only one way to rip a free standing refrigerated water fountain from its mooring." *See* Trial Court Opinion, at p. 5. We are inclined to agree with the reasoning of the trial court, and find that the two crimes were not so distinctive or unusual as to be like a signature or the handiwork of the same individual.

■ Even if we were to agree with appellant that the two crimes were so nearly identical so as to be the handiwork of the same person, we would still find that the evidence was properly excluded by the trial court. First, we note that despite appellant's argument to the contrary, appellant was not attempting to show that another individual committed the crime. At trial, Elise Ditson testified that in addition to appellant, Scott Henry and another individual also participated in the commission of the crime. *See* N.T., 10/7/88, at pp. 10–11, 13 and 16–17. Thus, the jury was aware of the fact that two other individuals besides appellant were responsible for the disconnection of the water fountain line. Based on this testimony, it is evident that appellant was not trying to establish that another individual committed the crime. Rather, the evidence of the second incident, when coupled with appellant's testimony that he was not in Clarion at the time the second incident occurred, was an attempt to prove that appellant could not have been present during the commission of the first crime since he was absent during the commission of the second offense. Consequently, the principles addressed in *Boyle* and *Smith, supra,* regarding the admission of evidence pertaining to other crimes in order to establish the identity of the perpetrator of the crime, are inapposite to the facts of this case.

■ In addition, we believe that the trial court properly excluded the evidence of the second offense because it was irrelevant to the issue at trial. As stated by this court,

[t]he basic requisite for the admissibility of any evidence in a criminal case is that it be competent and relevant.... Though "relevance" has not been precisely or universally

defined, the courts have repeatedly stated that evidence is admissible if, and only if, the evidence logically or reasonably tends to prove or disprove a material fact in issue, tends to make such a fact more or less probable, or affords the basis for or supports a reasonable inference or presumption regarding the existence of a material fact. *Commonwealth v. Davis,* 381 Pa.Super. 483, 491, 554 A.2d 104, 108 (1989), *allocatur denied,* 524 Pa. 617, 571 A.2d 380 (1989) (internal citations omitted).

As stated above, the jury was aware of the fact that Scott Henry and another boy were definite participants in the crime. *See* N.T., 10/7/88, at pp. 10–11, 13 and 16–17. Thus, the only question to be resolved at trial was not whether Henry or the other boy rather than appellant committed the crime, but whether appellant was present during the incident and actively participated in the incident along with Henry and the other individual. When viewed in this light, we are unable to infer that appellant's lack of participation in the second incident renders it more probable than not that appellant was also absent when the first water fountain was disconnected. Simply stated, appellant's absence from Clarion during the commission of the second offense does not negate his presence and participation in the first incident. Because we find that the evidence of the second incident was irrelevant to the issue presented at trial, we affirm the trial court's exclusion of the evidence.

 Appellant next contends that he was entitled to receive a new trial on the basis of after-discovered evidence. A new trial may be granted on this basis only if the new evidence

(1) has been discovered after the trial and could not have been obtained at or prior to the conclusion of the trial by the exercise of reasonable diligence;

(2) is not merely corroborative or cumulative;

(3) will not be used solely for impeaching [the] credibility of a witness; and

(4) is of such nature and character that a different verdict will likely result if a new trial is granted.

*Commonwealth v. Hunter*, 381 Pa.Super. 606, 618, 554 A.2d 550, 555 (1989). Moreover, we recognize that "absent a clear abuse of discretion, the trial court's refusal to grant a new trial on the basis of after-discovered evidence will not be disturbed on appeal." *Id.* We shall address appellant's arguments in accordance with this standard.

While the record indicates that Henry did not voluntarily reveal this information until after the conclusion of the trial, appellant offers no explanation as to why this evidence could not have been obtained prior to the conclusion of the trial through the exercise of reasonable diligence. *See e.g., Commonwealth v. Frey*, 512 Pa. 557, 564, 517 A.2d 1265, 1268 (1986), *cert. denied*, 481 U.S. 1007, 107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). At trial, Ditson testified that Scott Henry was the individual who disconnected the water line. Moreover, appellant was aware of Scott Henry's involvement in the second offense, since the Commonwealth had previously requested that Henry's trial be consolidated with Nocero's trial.[5] Finally, appellant's trial counsel asked for the admission into evidence of Officer Marsili's Affidavit of Probable Cause in which Scott Henry was identified as one of the participants in the incident. *See* N.T., 10/7/88, at pp. 24–25, and Affidavit of Probable Cause, dated December 3, 1987, at p. 3. Therefore, as the record clearly indicates, appellant was certainly aware of the fact that Scott Henry was involved in the commission of the crime prior to the conclusion of the trial. However, there is no indication in the record as to why appellant could not have attempted to secure Henry's testimony until after the conclusion of the trial. In view of the fact that appellant has offered no reasonable explanation for his failure to investigate the incident and learn of Henry's participation in

5. Consolidation of the two cases never occurred because Henry wanted to proceed with a non-jury trial, whereas Nocero wanted his case to be heard by a jury. *See* Order, dated September 7, 1988.

the crime, we believe that the first element of the test has not been met.

The next element of the test requires appellant to show that the after-discovered evidence is not merely cumulative or corroborative of the evidence produced at trial. In this case, Ditson testified that another male and appellant had their hands on the water fountain and laughed while Scott Henry broke the water line. *See* N.T., 10/7/88, at pp. 11, 13 and 15–18. Further, appellant denied any involvement in the incident and testified at trial that he was not present in the dormitory at the time the water fountain was damaged. *See* N.T., 10/7/88, at pp. 35–38. Henry corroborated Ditson's testimony in that he admitted to disconnecting the water line from the water fountain. *See* N.T., 11/7/88, at p. 5. Henry's testimony also corroborated Ditson's observations that he was accompanied by two other males at the time the water line was disconnected. *See* N.T., 11/7/88, at p. 6. Henry's testimony further supported appellant's defense in that Henry indicated that appellant was not present during the water fountain incident. *See* N.T., 11/7/88, at p. 3. Based on our review of this testimony, we find that Henry's statements were merely cumulative or corroborative of the evidence produced at trial. Accordingly, we find that appellant has failed to prove that the second element has been met.

The third element of the test requires that the after-discovered evidence not be used for the sole purpose of impeaching the credibility of a witness. Henry indicated that Ditson's story was incorrect with regard to the manner in which the water line was disconnected. Ditson stated that Henry "fiddled with something at the back of the water fountain. *See* N.T., 10/7/88, at pp. 10, 11, 13, and 16–17. Henry, however, suggested that Ditson's testimony was false and full of discrepancies because he had no difficulty in disconnecting the water line and was able to "rip it off real easy". *See* N.T., 11/7/88, at pp. 5, 11 and 13. Further, Henry stated that one of his friends had an appearance which was similar to appellant's, *see* N.T., 11/7/88, at p. 13,

thereby indicating that Ditson had identified the wrong individual. Finally, as mentioned above, Henry denied that appellant was involved in the commission of the offense. *See* N.T., 11/7/88, at p. 3. In reviewing this testimony, it is evident that appellant's sole purpose in introducing Henry's testimony was to impeach the testimony offered by Elise Ditson. Consequently, we conclude that appellant has not satisfied the third prong of the test.

Even if we were to assume for the sake of argument that appellant had successfully satisfied the above requisites, a new trial may only be awarded if the evidence is of such nature and character that a different verdict will likely result. In this case, Henry did not divulge any information to the authorities until the criminal charges which were pending against him had been successfully resolved.[6] Thus, Henry had nothing to lose by offering testimony which was favorable to appellant. More importantly, Henry admitted that he had lied about this incident on two prior occasions.[7] As observed by our Supreme Court,

> the fact that this statement was given by a convicted co-defendant in this crime who only made the statement after he had been sentenced for his participation and therefore had nothing to lose by attempting to aid the cause of his co-conspirator raises a significant question as to its reliability. We have long recognized that post-verdict accomplice testimony must be viewed with a jaundiced eye.

*Commonwealth v. Frey, supra,* 512 Pa. at 565, 517 A.2d at 1268–1269; *see also Commonwealth v. Treftz,* 465 Pa. 614, 630, 351 A.2d 265, 272–273 (1976), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2658, 49 L.Ed.2d 392 (1976). In view of the above reasoning, we agree with the trial court that Henry's

6. Henry was placed on ARD in lieu of other punishment for his involvement in the one or both of the water fountain incidents. *See* N.T., 11/7/88, at p. 12.

7. Specifically, Henry admitted that he lied to Campus security and had lied at his preliminary hearing. *See* N.T., 11/7/88, at pp. 3–4, 7–8 and 10–11.

evidence was not of such nature and character that it would likely result in a different verdict.

■ The final issue raised by appellant is whether the trial court erred in failing to grant his motion in arrest of judgment on the basis of the after-discovered evidence.[8] After-discovered evidence does not entitle appellant to have judgment arrested, since a motion in arrest of judgment is directed to the sufficiency of the evidence produced *at trial*. *See Commonwealth v. Groff*, 378 Pa.Super. 353, 362–363, 548 A.2d 1237, 1242 (1988) and *Commonwealth v. Yapsuga*, 369 Pa.Super. 336, 339, 535 A.2d 187, 188 (1987). Thus, where evidence is discovered following a defendant's trial and the evidence meets the four criteria outlined above, the appropriate remedy would be to award a defendant a new trial, rather than to arrest judgment. As previously discussed, appellant has failed to establish that the after-discovered evidence satisfies the four prongs of the *Hunter* test. Accordingly, Scott Henry's exculpation of appellant does not require that judgment be arrested in this case.

In sum, we conclude that the trial court did not err in prohibiting appellant from introducing evidence of the second water fountain incident because this incident was irrelevant to the question of whether appellant participated in the first incident. Further, we find that the after-discovered evidence in the form of Scott Henry's confession did not entitle appellant to the receipt of a new trial since appellant failed to establish that any of the requisite criteria had been satisfied in this case. Similarly, the after-discovered evidence does not entitle appellant to have judgment on his conviction arrested. In view of the reasoning set forth above, we perceive no basis for overturning appellant's conviction, and therefore, affirm the judgment of sentence.

Judgment of sentence affirmed.

8. Appellant does not argue that the evidence produced at trial was insufficient to sustain his conviction. As a result, we need not address this question.