J-A15012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMAL GLOVER, | |
| Appellant | No. 1153 EDA 2014 |

Appeal from the Judgment of Sentence March 28, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008060-2012

BEFORE:  BOWES, MUNDY, AND FITZGERALD* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED AUGUST 13, 2015**

Jamal Glover appeals from March 28, 2014 judgment of sentence imposed following his January 7, 2014 conviction of third-degree murder, possession of a firearm without a license, possessing a firearm in public in Philadelphia, and possessing an instrument of crime ("PIC").  We affirm.

The trial court summarized the facts of the case as follows:

These charges arose out of a string of shootings in the City and County of Philadelphia between Appellant Jamal Glover, also known as "Fat Mal", and decedent, Charles A. Britten, III (Britten), also known as "Dirt". At approximately 5:05 P.M. on May 23, 2011, Appellant was walking west on Cambria Street when he saw Britten riding in his direction on a bicycle. As Appellant walked toward Britten, Britten shot at Appellant two (2) times with a .09mm [nine millimeter] handgun. At the intersection of West Cambria and North Bambrey Streets, Appellant returned fire at Britten with a .380mm [thirty-eight millimeter] handgun, shooting at Britten seven (7) times and striking him six (6) times. Britten was shot two (2) times in the

_____

* Former Justice specially assigned to the Superior Court.

upper right back, one (1) time in the lower right back, one (1) time in the lower right flank, one (1) time in the right hip, and (1) time in the right elbow. Britten fell off his bicycle and ran west on Cambria before collapsing in the crosswalk of North Baily and West Cambria Streets. Appellant walked west on Cambria Street and entered a house on the corner of West Cambria and North Bambrey Streets.

Britten was still alive but unresponsive when Police Officer Matthew Lally arrived on the scene at approximately 5:08 P.M. Officer Lally placed Britten in the back of his police car and transported Britten to Temple University Hospital. Britten was pronounced dead at 5:30 P.M. by Dr. Hughes. An autopsy was performed by Assistant Medical Examiner Dr. Aaron Rose, who determined that the cause of Britten's death was multiple gunshot wounds. The manner of death was homicide. A warrant for Appellant's arrest was executed on February 1, 2012, outside of Appellant's home by Police Officer Cyprian Scott.

Trial Court Opinion, 10/22/2014, at 3.

A non-jury trial commenced on January 6, 2014. At trial, the Commonwealth introduced videotape security footage acquired from six cameras located in a store near the scene of the shooting. N.T., 1/6/14, at 16. Although the footage did not capture the actual shooting, Appellant was seen wearing a white shirt and leaving the grocery store at 4:55:16 and walking out of the view of the camera at 4:55:32. *Id*. at 24-25. At 5:05, the time of the shooting, the decedent was seen coming into the view of the camera and falling in the intersection. *Id*. at 25-26, 34-35.

It was stipulated that the Medical Examiner, Dr. Aaron Rosen, would testify to a reasonable degree of medical certainty that the victim sustained six gunshot wounds and that the manner of death was homicide caused by

those gunshot wounds. *Id*. at 53-56. The Commonwealth produced eyewitness Abdon Sutton. Sutton denied knowledge of the shooting and was confronted with a statement he provided to homicide detectives in January 2012. He then denied giving the statement, and the Commonwealth impeached him with it. In the statement, Sutton stated that he knew both Appellant and the victim and that they had been shooting at each other. *Id*. at 72-80. On the day in question, Sutton saw Appellant shooting at the victim, and he subsequently identified Appellant from a photographic array. *Id*.

Detective John McNamee, a detective since 1990, testified that he and his partner received Sutton's statement implicating Appellant in the shooting death of Britten, and the entire statement was read into the record. *Id*. at 100-103. The detective confirmed that Sutton identified Appellant's photograph and signed his name underneath the photograph. *Id*. at 105.

The Commonwealth called Christopher Johnson, also known as "Quest." Johnson initially maintained that he did not see anything. *Id*. at 120. He remembered hearing shots, but maintained that his back was to the events. After Johnson was confronted with his June 26, 2011 statement to police, he admitted knowing the man who shot the victim on the bike, that the shooter was Appellant, and that he formerly cut Appellant's hair. *Id*. at 123, 133, 139. Johnson confirmed during his direct testimony that he saw Appellant shoot the victim six or seven times with a black automatic

handgun and watched Britten jump off the bicycle before running up the street and collapsing. *Id*. at 134-136, 139. He also testified consistently with his statement that he did not see anyone else shooting except Appellant. *Id*. at 135. Johnson selected Appellant's photograph from an array at the time and identified him again at trial. *Id*. at 133, 141.

The Commonwealth advised Appellant that it intended to call Daryldre Funchess as a witness. On January 7, 2014, prior to the commencement of the second day of trial, Appellant filed a motion *in limine* seeking to admit evidence of Funchess' open attempted murder case. Specifically, the defense wished to cross-examine Funchess regarding what it maintained were strikingly similar facts between that open case and the facts in the instant case in order to create reasonable doubt by suggesting that Funchess, not Appellant, was the shooter. Alternatively, Appellant sought a ruling from the court permitting him to introduce those facts through a police witness. The motions court heard argument on the motion, which was recorded but not preserved, and ruled that only the fact of Funchess's open attempted murder charge was admissible. Appellant's Pa.R.A.P. 1923 Statement, at 3.

On direct examination, Funchess acknowledged that he was currently in the county prison, that he had been charged in an attempted murder case, that it involved a shooting with multiple shots fired, and that at the time of the instant shooting, he was out of jail. N.T., 1/7/14, at 60. Mr.

Funchess testified that he was in a Chinese store at the intersection of Cambria and Stillman on May 23, 2011 at 5:00 p.m. He heard four to six shots and looked out the store window. He saw Appellant, whom he had known for ten years, running down Bambrey Street. N.T., 1/7/14, at 61-62. Appellant had a gun. *Id*. at 63. He did not see Appellant shoot anybody. *Id*. at 64. Funchess also testified that he knew the decedent, Charles Britten, and saw him "laid out on the bike" after the shooting. *Id*. at 63-64.

On cross-examination, Funchess was questioned about his testimony at the preliminary hearing that people were suggesting he was involved in the crime. *Id*. at 73-74. Defense counsel reaffirmed that he had an open case for attempted murder in which he was alleged to have fired multiple gunshots at his victim, *id*. at 75-76, and that he was on probation for assault. After defense counsel confronted the witness with his statement and preliminary hearing testimony in which he denied that Appellant had a gun, he retracted his earlier testimony that Appellant had a gun. *Id*. at 82-4. Funchess confirmed that prior to the May 23, 2011 shooting, the victim had been riding around shooting at people on Bambrey Street. On re-cross, Funchess reiterated that he heard the gunshots but did not actually see the shooting. *Id*. at 89-90.

On January 7, 2014, the trial court convicted Appellant of third-degree murder, possessing a firearm without a license, possessing a firearm on a street or public property in Philadelphia, and possessing an instrument of

crime. N.T., 1/7/14, at 124. On March 28, 2014, the trial court sentenced Appellant to an aggregate sentence of twenty to forty years. *Id*. at 11. He timely appealed, complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and this matter is ripe for disposition.

Appellant raises the following issue on appeal:

Was it not error, an abuse of discretion, and a constitutional violation to exclude evidence tending to show that an alternate person had committed the crime of which appellant was accused, especially as that person was a key witness against appellant at his trial, in violation of appellant's right to present reliable evidence of third party guilt as guaranteed by the United States Constitution, Pennsylvania decisional law and the Pennsylvania Rules of Evidence?

Appellant's brief at 3.

"When reviewing a ruling on a motion in limine, we apply an evidentiary abuse of discretion standard of review." *Commonwealth v. Parker*, 104 A.3d 17, 21 (Pa.Super. 2014) (quoting *Commonwealth v. Orie*, 88 A.3d 983, 1022 (Pa.Super. 2014)). The law is well settled that questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Kendricks*, 30 A.3d 499, 503 (Pa.Super. 2011) (citing *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa.Super. 2003)). An abuse of discretion is not merely an error of judgment, but occurs when "the law is overridden or misapplied, or the

judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." ***Commonwealth v. Montalvo***, 986 A.2d 84, 94 (Pa. 2009). Additionally, evidentiary errors are subject to the harmless error doctrine. Judgment of sentence will be affirmed despite an evidentiary error if the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict. ***Commonwealth v. Moran***, 104 A.3d 1136 (Pa. 2014).

Appellant contends that the motions court erred in precluding him from demonstrating the similarity between the facts of the instant crime and the facts of a pending attempted murder charge against Daryldre Funchess. He maintains that such evidence tended to show that Funchess was the shooter. Appellant filed a statement in absence of transcript pursuant to Pa.R.A.P. 1923, in which set forth the following account of the argument presented to the motions court regarding this evidence:

> The facts presented to the motion court were that in both Mr. Funchess' and appellant's cases, there was an on-the-street shooting involving approximately 6 shots fired. Both involved automatic or semi-automatic hand guns (the gun in appellant's case was not recovered but the evidence of fired cartridge casings indicated an automatic or semi automatic weapon). In both instances, the victim was shot at least once in the torso area. Both instances happened within less than a half mile of each other in the same North Philadelphia neighborhood. In both cases, the victim and the alleged shooter knew each other. Mr. Funchess also knew the victim in appellant's case.

Appellant's Pa.R.A.P. 1923 Statement, at 3.

Appellant claims that the facts of the offense with which Funchess was charged are "remarkably similar" to the facts of the crime for which Appellant was convicted. He argues that the similarity simultaneously supports a defense theory of innocence as well as his theory that Funchess was the real perpetrator, and he contends that this evidence was admissible under Pa.R.E. 404(b).[1] In that regard, Appellant maintains that a more relaxed standard of admissibility applies where it is offered by the defense and there is no potential prejudice to the defendant. *See Commonwealth v. Thompson*, 779 A.2d 1195 (Pa.Super. 2001) (holding evidence which tends to show that the crime of which the accused stands trial is relevant and admissible) (citing *Commonwealth v. McGowan*, 635 A.2d 113 (Pa. 1993)). The evidence need not rise to the level of a "signature crime," the standard adopted in *Commonwealth v. Nocera*, 582 A.2d 376 (Pa.Super. 1990), and applied recently in *Commonwealth v. Palagonia*, 868 A.2d 1212 (Pa.Super. 2005).

Appellant cites *Holmes v. South Carolina*, 547 U.S. 319 (2006) (exclusion of evidence of third-party guilt denied defendant fair trial), and

---

[1] Appellant characterizes the proffered evidence as "reverse 404(b) evidence," a term employed by the federal courts when referring to other crimes evidence offered by the defense to suggest that another is the actual perpetrator. Pa.R.E. 404(b) provides that evidence may be admissible for the purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Pa.R.E. 404(b)(2).

*Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (recognizing fundamental right of accused to present defensive evidence as long as it is relevant and not excluded by an established evidentiary rule), in support of his contention that exclusion of the proffered evidence deprived him of his right to due process and a fair trial.[2]   Finally, in response to the Commonwealth's contention that any error was harmless, Appellant counters that Funchess was his "main accuser," and the error substantially prejudiced him as the evidence of guilt was not "uncontradicted" and "overwhelming."

The Commonwealth counters that the evidence was irrelevant. Funchess had not been convicted of the other crime, and furthermore, the facts of Funchess's underlying case and the case at issue were not sufficiently similar in distinctive details as to tend to suggest that he rather than Appellant was the perpetrator.  In demonstrating similarity in the two crimes, the Commonwealth charges "[t]he defendant is reduced to relying on common factors that are so generic as to be virtually meaningless." Commonwealth's brief at 12.   The Commonwealth summarizes and

---

[2]   Appellant does not argue that the exclusion of the proffered evidence violated his Sixth Amendment right to confrontation.  It is well settled that a the right to cross-examine is circumscribed by considerations of relevancy, *i.e.*, evidence tending to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

compares the facts of the two crimes in order to demonstrate that they were not similar.

Mr. Britten was shot on the 2500 block of West Cambria Street in a violent neighborhood. N.T., 1/6/14, at 15, 143. The crime with which Funchess was charged occurred a year earlier on an unidentified street in North Philadelphia purportedly one-half-mile away. Seven shots were fired at Mr. Britten, six of which struck him. Britten was shot twice in the upper right back, and once in the lower right back, lower right flank, right hip, and right elbow. *Id*. at 53-59; N.T., 1/7/14, at 9. Appellant proffered that multiple shots also were fired in the other case, and that the victim was hit once in the torso. An automatic or semi-automatic handgun was used in the first crime; an automatic or semi-automatic weapon of some kind was used in the instant crime. Finally, Appellant suggests that Funchess knew both victims, although Funchess testified that he did not know Britten "personally" but only recognized him from seeing him around the neighborhood. *Id*. at 63.

The Commonwealth argues that any similarities between the two crimes are so generic and indistinctive as to lack any probative value. It contends that the cases upon which Appellant relies are factually distinguishable as they involved crimes with distinct details that were similar and thus probative in showing that the crimes were committed by the same person. The Commonwealth concludes that since the evidence was not

relevant, its exclusion did not violate Appellant's right to due process. Furthermore, any error in excluding the evidence was harmless in light of the testimony from two eyewitnesses identifying Appellant as the shooter and videotape showing that Appellant was at the scene.

The following principles inform our review. Our rules of evidence preclude testimony if it "does not tend to prove or disprove a material fact in issue, or to make such a fact more or less probable, or if it does not afford the basis for a logical or reasonable inference or presumption as to the existence of a material fact in issue." *Commonwealth v. Thompson*, 779 A.2d 1195, 1200-1201 (Pa.Super. 2001). Evidence is only relevant if it logically tends to establish a material fact in the case or tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. *Commonwealth v. Drumheller*, 846 A.2d 747 (Pa. 2002). Evidence which tends to show that the crime for which an accused stands trial was committed by someone else is relevant and admissible. *McGowan*, *supra*; *Commonwealth v. Ward*, 5 605 A.2d 796 (Pa. 1992). Such evidence is evidence that "someone else committed a crime that bears a **highly detailed** similarity to the crime with which [he] is charged." *Commonwealth v. Patterson*, 91 A.3d 55, 72 (Pa. 2014) (emphasis added) (quoting *Commonwealth v. Weiss*, 81 A.3d 767, 806-07 (Pa. 2013)); *Commonwealth v. Rini*, 427 A.2d 1385, 1388 (Pa.Super. 1981).

What constitutes "detailed similarity" is best illustrated by examining the cases making that determination. In **Rini**, **supra**, the defendant was charged with indecent exposure. The evidence revealed that at approximately 9:00 a.m., as two girls were crossing a bridge on their way to school, a comment uttered by an individual on the railroad tracks below prompted them to look down. They saw a man with his pants pulled down to mid-thigh, exposing his genitals. The girls reported the incident when they arrived at school and police were called. The girls identified the defendant as the perpetrator.

At trial, the defense sought to introduce testimony from a young girl who attended the same high school as the complainants to the effect that, six days prior to the incident, she and two friends were crossing the same bridge at the same time and their attention was drawn to a man on the tracks below who was exposing himself. Initially, this girl and her friends identified the defendant as the perpetrator from his mug shot, but at the preliminary hearing on charges arising from that incident, two of the three girls stated that, while the defendant closely resembled the man they had seen, he was not the same man.

The defense offer of proof was simply that the defendant was arrested on a similar charge, that he looked like the perpetrator but was not the perpetrator, and that this was relevant to show that the girls could be

mistaken in their identification of defendant. The trial court excluded the evidence on relevancy grounds, a ruling that was challenged on appeal.

This Court vacated judgment of sentence and remanded for further proceedings. We concluded that, "[w]hen the defense offers evidence that someone other than the defendant committed a crime with a detailed similarity to the one charged, the probative value is equally strong in showing that the defendant did not commit the crime charged, and the argument for admissibility is even stronger, because there is no prejudice to weigh against this equally strong probative value." *Id*. at 1388. The evidence was "unquestionably relevant." *Id*.

In contrast, in *Palagonia*, *supra*, other crimes evidence was not relevant as the facts were not sufficiently similar. In that case, the complainant called police to report that two young men had been on her second floor apartment balcony but fled when they saw her. A short time later, two young males matching the description were apprehended by police and the complainant identified them as the men she had seen earlier on her balcony. Palagonia, one of the men, was convicted of criminal trespass and conspiracy to commit criminal trespass. At trial, he sought to introduce testimony from persons living in a neighboring housing complex that a rash of burglaries occurred sometime during that same night. The trial court excluded the testimony as irrelevant. Palagonia argued on appeal, based on *Rini*, that he should have been permitted to inform the jury about the other

burglaries in an effort to show that someone else, not him, was on the balcony that night.

This Court acknowledged that *Rini* stands for the proposition that criminal defendants are entitled to offer evidence that some other person committed a similar crime at or around the same time they are alleged to have committed the crime for which they stand accused. However, in determining whether the proffered evidence actually establishes this fact, we considered the two factors identified in *Nocero*, *supra*, "that coalesce to establish its relevance and probative value." *Palagonia*, at 1216. Those factors are 1) the lapse of time between the commission of the two crimes, and 2) the resemblance between the methodologies of the two crimes. *Id*. We held that although the time lapse between the crimes was brief, the nature of the crimes was not "so distinctive or unusual as to be like a signature or the handiwork of the same individual." *Id*. The burglaries in the other complex were similarly distinctive as in all those cases, the perpetrators pried open garage doors with tools and removed items from the garages. The conduct in this crime was vastly different since it did not involve forced entry, tools, or a garage. This Court found no abuse of discretion in the trial court's exclusion of the burglary evidence.

Appellant urges us to follow the lead of the federal courts in their application of F.R.E. 404(b) other crimes evidence offered by a defendant. He cites Professor Weinstein for the proposition that the admissibility of such

evidence is "solely dependent on its passing the relevance test of [F.R.E.] Rule 402 and the balancing test of [F.R.E.] Rule 403." 1-7 Weinstein's Evidence Manual § 7.01. Appellant's reply brief at 16. He relies upon **United States v. Montelongo**, 420 F.3d 1169, 1174 (10th Cir. 2005), where the court identified "the similarities between the two crimes and their temporal proximity" as "two especially pertinent factors" in making such evidence probative. Appellant's brief at 16.

We see little difference between the federal courts' treatment of reverse 404(b) evidence and our own approach. In each instance, the evidence must be probative. Similarity and temporal proximity in the two crimes are factors that tend to make the evidence relevant. Appellant's proffered evidence herein simply was not probative. The crimes at issue herein occurred more than one year apart at locations one-half mile away from each other. N.T., 1/7/14, 65-66, 74. The fact that at least six shots were fired from automatic or semi-automatic weapons, one of which struck the torso of the victim in both cases, does not make it likely that the same person was the shooter. Missing herein was the type of distinctive similarity in the details and proximity in time that is probative of a common identity among the perpetrators of the two crimes. In precluding the underlying facts of the case involving Funchess, the motions court properly applied Pennsylvania decisional and evidentiary law and did not violate Appellant's right to present a defense. Accordingly, we find no abuse of discretion.

Appellant's due process claims are without merit. In **Holmes**, the state rule required the judge to focus on the strength of the prosecution's case rather than the probative value of the evidence. The effect of the state rule therein was to exclude evidence of third party guilt even if it had probative value, as long as the prosecution's case was strong enough. **Id**. This created a state rule that was illogical, irrational and/or arbitrary. **Id**. That is not the situation here. Had the proffered evidence herein been relevant, it would have been admitted.[3]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/13/2015

_____

[3] Since we found no error in the exclusion of the evidence, we do not reach the issue of whether any error was harmless. We note, however, that Funchess was not Appellant's main accuser as Appellant contends. Funchess heard the shots, saw Appellant run from the area, but did not see the shooting. Two eyewitnesses to the shooting identified Appellant as the shooter. Furthermore, several of the underlying details of the crime with which Funchess was charged were elicited at trial. The court heard that Funchess was charged with attempted murder, that multiple shots were fired in that case, and that Funchess was familiar with the victim in this case from the neighborhood.