J-S47027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL JOHN KILLIANY | |
| Appellant | No. 1578 MDA 2015 |

Appeal from the Judgment of Sentence May 11, 2015
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0001492-2013

BEFORE:  SHOGAN, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                     **FILED JULY 21, 2016**

Appellant Michael John Killiany appeals from the judgment of sentence entered in the Lackawanna County Court of Common Pleas, following his jury trial convictions for arson (endangering persons), arson (inhabited building or structure), insurance fraud, and recklessly endangering another person ("REAP").[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. On February 25, 2013, Nicole Everetts purchased property at 59 Belmont Street in Carbondale, Pennsylvania ("the property") at a Lackawanna County tax sale for $3,200.00.  N.T., 2/12/15, at 206, 212.  Before the judicial tax sale, Appellant owned the property for several years.  *Id.* at 231.  He was

_____

[1] 18 Pa.C.S. §§ 3301(a)(1)(i), 3301(a)(1)(ii), 4117(a)(2), and 2705, respectively.

aware of the judicial tax sale but remained living in the home on the property. N.T., 2/13/15, at 116.

On May 4, 2013, Ms. Everetts received a letter apprising her of several code violations for which she was responsible as the new owner of the property. N.T., 2/12/15, at 223. She went to the property with her husband and began to clean up the yard. *Id.* at 228. Appellant's adult daughter, Jessica Killiany, arrived at the property and was very angry to see the Everetts there. *Id.* at 230. When she realized the Everetts had purchased the property at a judicial tax sale and were cleaning to correct code violations, Jessica began to help clean. *Id.* When Appellant arrived at the property, he was very angry, yelled at the Everetts, and told them that they stole his house from him. *Id.* at 231. Jessica allowed the Everetts to walk through the interior of the home on the property. *Id.* at 232.

Later that day, Ms. Everetts sent Appellant a letter advising him that he had until May 11, 2013 to remove animal feces, trash, and debris from the interior of the home. *Id.* at 248. The letter stated that if he complied with Ms. Everetts request, he would be allowed to rent the property for $600.00 per month, but if he did not comply with the request, he would be evicted and would be required to remove all of his personal belongings from the property by May 17, 2013. *Id.* Jessica secured new housing for herself and her father and apprised Appellant of this. N.T., 2/13/15, at 79.

Appellant told his neighbor, Mark Galaydick, that he wanted his house to be uninhabitable before the new neighbors acquired it. N.T., 2/12/15, at

153. He talked about shorting out the electric by putting a penny in the fuse box or infesting his home with cockroaches. *Id.* He told his neighbor that it would be "something to see 50 foot flames shooting up" from the house, and that if he could not have the house, nobody would. *Id.* at 153-54. Appellant also mentioned, to no one in particular, at a nearby Turkey Hill convenience store that he would "torch" his home before allowing "them" to take it. *Id.* at at 136.

On May 9, 2013, around 2:30 a.m., firefighter Thomas Francis Brennan received a call that the house on the property was on fire. N.T., 2/11/15, at 45, 52. Twenty-one firefighters reported to the scene. *Id.* at 64. Appellant told State Trooper Steven Kaneski that, when the fire began, he was sitting at his computer on the first floor of the home when he heard his dog bark at the basement door. N.T. 2/12/15, at 92. Upon opening the door to the basement, which he had not entered in weeks, he heard a loud bang and smelled smoke. *Id.* Appellant's neighbor, Mr. Galaydick, was alerted of the fire by a neighbor who lived below him. *Id.* at 159. Firefighters told Mr. Galaydick and his family to leave their home because ammunition in the basement of the property was exploding as a result of the fire. *Id.* at 161. Mr. Galaydick saw Appellant sitting in a Red Cross Tent across the street with his dogs. *Id.* at 164. Appellant, who was fully dressed, cocked his head and said in a tone Mr. Galaydick perceived to be cocky, "What a 'F' ing coincidence." *Id.* at 169. Later that morning, Appellant stated in the Turkey Hill that he was glad "the bitch burnt." *Id.* at

140. The next day, Appellant filed a claim with Allstate Insurance Company, where he had the house insured for $138,000.00, plus $70,000.00 for personal property. *Id.* at 196-199.

On February 13, 2015, a jury convicted Appellant of two counts of arson (endangering persons) and one count each of arson (inhabited building or structure), insurance fraud, and REAP. On May 11, 2015, the court sentenced Appellant to consecutive terms of 12-36 months' incarceration for each of his three arson convictions. The court imposed a sentence of 1-2 months' incarceration for insurance fraud, and 1-2 months' incarceration for REAP, to be served concurrently with the other period of incarceration. On May 21, 2015, Appellant filed a post-sentence motion. On August 26, 2015, the court granted Appellant's post-sentence motion in part, finding that Appellant's conviction for arson (inhabited building or structure) merged with his convictions for arson (endangering persons) for sentencing purposes. The court re-sentenced Appellant to an aggregate sentence of 2-6 years' incarceration.

On September 14, 2015, Appellant filed a notice of appeal. On September 16, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied on October 7, 2015. On October 14, 2015, the trial court issued a Pa.R.A.P. 1925(a) opinion, in which it incorporated its orders of August 26, 2015 and February 10, 2015.

Appellant raises the following issues for our review:

1. WAS THE VERDICT ON ALL CHARGES CONTRARY TO THE WEIGHT OF THE EVIDENCE PRESENTED TO SUPPORT A FINDING OF GUILT BEYOND A REASONABLE DOUBT RELATIVE TO PROOF OF THE ELEMENTS OF EACH CHARGE, COUNTS 1-3 & 5-6, IN PARTICULAR THAT APPELLANT CAUSED OR STARTED THE FIRE?

2. DID THE TRIAL COURT ERR AND/OR ABUSE ITS DISCRETION IN FAILING TO ORDER DISCLOSURE OR GRANT LEAVE TO INSPECT THE REPORTS OF THE PENNSYLVANIA STATE POLICE AND/OR CARBONDALE POLICE DEPARTMENT CONCERNING AN INVESTIGATION INTO AN ARSON AT 37 BELMONT STREET, CARBONDALE, PA PURSUANT TO PENNSYLVANIA RULE OF CRIMINAL PROCEDURE 573 AND THEN EXCLUDING THIS EVIDENCE FROM USE AT TRIAL WHERE IT BORE HIGHLY DISTINCTIVE SIMILARITIES TO THE OFFENSES FOR WHICH APPELLANT STOOD TRIAL, THEREBY DEPRIVING APPELLANT OF AN ADEQUATE DEFENSE AND A FAIR TRIAL?

3. DID THE TRIAL COURT ERR OR ABUSE ITS DISCRETION IN ALLOWING TROOPER CASTALDI TO TESTIFY, ON REBUTTAL, OVER THE OBJECTION OF COUNSEL, TO AN ORAL STATEMENT OF APPELLANT WHERE THE SAME NEITHER CONSTITUTED REBUTTAL NOR WAS IT DEMONSTRATIVE OF AN INCONSISTENT STATEMENT IN VIOLATION OF PA.R.E. 613?

Appellant's Brief at 3.

In his first issue, Appellant claims the verdict was against the weight of the evidence, because the only evidence presented against him was circumstantial and the only testimony of his admission was not disclosed until two years after the fire. We disagree.

We review challenges to the weight of the evidence as follows:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the

- 5 -

> witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> ***Commonwealth v. Small***, 741 A.2d 666, 672–73 (Pa.1999) [*cert. denied*, 121 S.Ct. 80, 148 L.Ed.2d 42 (U.S.2000)]. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Devine***, 26 A.3d 1139, 1146 (Pa.Super. 2011), *appeal denied*, 42 A.3d 1059 (Pa.2012) (some internal citations omitted).

This Court has recognized that "a true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa.Super.2014). Accordingly, "[o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa.2013). A trial judge should not grant a new trial due to "a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." ***Id.*** Instead, the trial court must examine whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny

- 6 -

justice." *Id.* Only where the jury verdict "is so contrary to the evidence as to shock one's sense of justice"[2] should a trial court afford a defendant a new trial. *Id.*

Here, the verdicts are not so contrary to the evidence as to shock one's sense of justice. Appellant admitted to feeling angry about losing his house at a judicial tax sale and telling neighbors that he would set fire to the house so that nobody else would be able to live in it. He was the only person in his home at the time of the fire. He denied entering the basement, so he could not have set the fire that started there by accident. The fire ignited a few days before he needed to clean the house to avoid eviction, and he filed an insurance claim the next day. His daughter had secured him another place to live at that time. Further, he seemed cocky after the fire, joked about what a coincidence the fire created, and stated that he was glad the house had burned. The trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence.

Next, Appellant challenges a trial court evidentiary ruling. He claims the court erred in failing to admit evidence of arson in another home in his neighborhood. He claims that evidence of this incident would establish that

---

[2] When "the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Cruz*, 919 A.2d 279, 282 (Pa.Super.2007) (internal citations omitted).

someone other than Appellant started the fire and the court erred in its exclusion of it. Again, we disagree.

"The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." *Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa.2015) (quoting *Commonwealth v. Reid*, 99 A.3d 470, 493 (Pa.2014)). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Hairston*, 84 A.3d 657, 664-65 (Pa.2014), *cert. denied sub nom. Hairston v. Pennsylvania*, ___ U.S. ___, 135 S. Ct. 164, 190 L. Ed. 2d 118 (2014) (citing *Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa.2007)); *Grady v. Frito–Lay, Inc.*, 839 A.2d 1038, 1046 (Pa.2003).

The admissibility of evidence "depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Levanduski*, 907 A.2d 3, 13 (Pa.Super.2006) (*en banc*), *appeal denied*, 919 A.2d 955 ([Pa.]2007) (quoting *Commonwealth v. Drumheller*, 808 A.2d 893, 904 ([Pa.]2002), *certiorari denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003)).

"It is well established that evidence which tends to show that the crime for which an accused stands trial was committed by someone else is relevant and admissible." *Commonwealth v. McGowan*, 635 A.2d 113, 115 (Pa.1993). In this regard, "the defense may introduce evidence that someone else committed a crime which bears a highly detailed similarity to the crime with which the defendant is charged." *Id.* (citing with approval *Commonwealth v. Rini*, 427 A.2d 1385 ([Pa.Super.]1981)).

*Commonwealth v. Weiss*, 81 A.3d 767, 806-07 (Pa.2013).

Evidence of the other similar crime must be

*so nearly identical in method* as to earmark [it] as the handiwork of the accused. Here *much more is demanded than the mere repeated commission of crimes of the same class,* such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a *signature* ....

In addition, the Supreme Court has indicated that remoteness is a factor which must also be considered in determining the similarity of the crimes… [W]e therefore find the following factors to be relevant in determining whether evidence of the other uncharged offense or bad act is admissible: (1) the time lapse between the commission of the two crimes; and (2) the resemblance between the methodologies of the two crimes.

*Commonwealth v. Nocero*, 582 A.2d 376, 378-79 (Pa.Super.1990)

(internal quotations and citations omitted) (emphasis in original).

This court has previously held that where two separate crimes are committed within one hour in the same geographic area, evidence of the uncharged crime is admissible. However, where there is a time lapse of several years or months between the time that the offenses were committed, then evidence of the other crime has been held to be inadmissible.

*Id.* (internal citations omitted).

Here, the trial court denied Appellant's motion to compel the production of the arson investigation report of another home, because it would not lead to admissible evidence. The trial court reasoned:

> Based upon the *in camera* review of the PSP investigative materials, the arson which occurred at 37 Belmont Street does not bear a highly detailed similarity to the arson with which [Appellant] is charged. The lapse of time between the commission of the two arsons was slightly more than six months... Furthermore, the methodologies employed (i.e., ignition of ignitable liquid poured in the area vs. open flame ignition on available combustible material) are not so nearly identical in method with the device used, so unusual and distinctive as to be like a signature or the handiwork of the same individual.

Trial Court Order, filed February 12, 2015, at 5-6 (internal quotations and citations omitted).

We see no abuse of discretion in the trial court's refusal to admit evidence of the arson committed in an unoccupied structure, six months after the fire at the property.

In his final issue, Appellant argues the trial court erred by allowing rebuttal or impeachment evidence following his testimony, because he never denied a statement for which he was impeached. Again, Appellant challenges the trial court's evidentiary ruling.

"The general rule is that a prior inconsistent statement of a declarant is admissible to impeach the declarant." *Commonwealth v. Henkel*, 938 A.2d 433, 442 (Pa.Super.2007) (citing *Commonwealth v. Brady*, 507 A.2d 66, 68 (Pa.1986)). "In order to do so, there must be evidence that the

statement was made or adopted by the witness whose credibility is being impeached." ***Commonwealth v. Brown***, 448 A.2d 1097, 1102 (Pa.Super.1982) (internal citation omitted).

Appellant argues that upon cross-examination, he told the prosecutor that he could not remember exactly what he told Trooper Castaldi during his three interviews, and that Trooper Castaldi's testimony could be right. He claims that because he never denied making the statement to Trooper Castaldi, the court should not have allowed Trooper Castaldi to impeach him with a prior inconsistent statement. At trial, defense counsel objected to Trooper Castaldi's testimony, which followed Appellant's testimony, because it was not impeachment testimony and should have been presented in the Commonwealth's case in chief.

The trial court reasoned:

> [Appellant] testified in his own defense, and denied having provided a particular version of events during his interview by Trooper William Castaldi. In an effort to rebut that unanticipated denial by [Appellant], the Commonwealth presented the testimony of Trooper Castaldi who briefly testified regarding the statement that [Appellant] provided to him, and which varied from [Appellant's] trial testimony relative to the sequence of events immediately prior to the fire. Defense counsel objected to the presentation of Trooper Castaldi's rebuttal testimony, but that objection was overruled on the ground that the Commonwealth could not have known, prior to the trial testimony of [Appellant], that [Appellant] would deny having made the proffered statement to Trooper Castaldi.
>
> The Commonwealth is permitted to present rebuttal testimony to contradict evidence that is offered by the defense. Since [Appellant] did not testify during the

- 11 -

preliminary hearing in this case, the Commonwealth did not learn until [Appellant's] trial testimony that he was disputing the contents of the statement that he provided to Trooper Castaldi. Consequently, it was not an abuse of discretion to permit the Commonwealth to offer Trooper Castaldi's rebuttal testimony to contradict the sequence of events that [Appellant] offered at trial.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed October 14, 2015, at 4-5 (citations to the record omitted).

Even if Appellant's claim had merit and the court erred by admitting the impeachment testimony, the error was harmless.[3]

Here, for the reasons previously stated, the evidence was overwhelming that Appellant committed the crime, even without Trooper Castaldi's testimony. Further, Appellant admitted at trial that he might have made inconsistent statements to Trooper Castaldi, so the Commonwealth's presentation of these inconsistent statements did not prejudice him.

_____

[3] An error is harmless where:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial [e]ffect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Green*, 76 A.3d 575, 582 (Pa.Super.2013) (internal citation omitted).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2016