**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles A. PALAGONIA, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 17, 2004.

Filed Feb. 9, 2005.

Brian J. Collins, Allentown, for appellant.

David D. Ritter, Asst. Dist. Atty., Allentown, for Com., appellee.

BEFORE: HUDOCK, TODD and BECK, JJ.

OPINION BY BECK, J.:

¶ 1 In this appeal from the judgment of sentence for criminal trespass and related crimes, appellant claims that the evidence was insufficient and that the trial court erred in admitting certain evidence of the prosecution and excluding proffered evidence for the defense. We affirm.

¶ 2 Shortly before 11:00 PM on April 29, 2002, Autumn Norwood heard noises on the second floor balcony of her apartment in Whitehall Township. She looked out the balcony door and saw two young men, who immediately jumped off the balcony and onto the ground. Norwood promptly called police, described the men and explained that they fled on foot in the direction of Overlook Road. Whitehall Police Officer Paul Davis responded to the scene to interview Norwood.

¶ 3 Moments later, Officer Scott Smith in neighboring South Whitehall Township heard a police radio broadcast seeking assistance in apprehending two young white males in Whitehall. Officer Smith, who was approximately 600 yards away from the scene, responded to the call by driving to Norwood's apartment complex. Upon arrival, he saw that a sufficient number of Whitehall Township Police Officers already were on the scene. Officer Smith then turned around to head back to South Whitehall when he saw a lone car on Overlook Road near Norwood's apartment complex. In it were two young white males, appellant and Steven Martnick. Officer Smith stopped appellant's car and made radio contact with Whitehall police, who sent an officer to the scene. Once the Whitehall officers arrived, Officer Smith returned to South Whitehall.

¶ 4 Whitehall police contacted Officer Davis at Norwood's apartment while they detained appellant and Officer Davis drove Norwood to the scene of the traffic stop. As soon as Norwood saw the two young

men, she identified them as the men on her balcony. Police arrested the pair and charged them with burglary, criminal trespass and related offenses.

¶ 5 Prior to trial, appellant filed a motion to suppress Norwood's identification. The trial court denied the motion and the matter proceeded to trial. Appellant was convicted of criminal trespass and conspiracy to commit criminal trespass;[1] he was sentenced to an aggregate term of three years probation. This timely appeal followed.

■ ¶ 6 Appellant's first two issues are related. He argues that his conduct was insufficient to establish criminal trespass because his presence on an apartment balcony does not constitute "entry into a building, occupied structure or separately secured portion thereof." See 18 Pa. C.S.A. § 3503(a)(1). For the same reason, argues appellant, his conviction for conspiracy cannot stand. According to appellant, the balcony is akin to a fenced-in backyard, which this Court has determined does not fall within the ambit of § 3503. *Commonwealth v. Cannon,* 297 Pa.Super. 106, 443 A.2d 322 (1982).

¶ 7 We reject appellant's argument. The balcony in this case was situated on the second story of the building and access to it was available only from the interior of Ms. Norwood's apartment. Relying on testimony as well as photographs that are contained in the certified record, the trial court observed:

Unlike a residential backyard, this balcony was designed for entrance and exit exclusively from inside the apartment, and not the surrounding land of the residence one floor below. The balcony is designed to be used only by the occupant of the apartment and is in no way connected to the land surrounding the residence. As such, the balcony is a separately secured or occupied portion of the apartment dwelling.

Trial Court Opinion, 1/29/04, at 4.

¶ 8 We agree with the trial court's assessment. *Cannon* does not control where, as here, the balcony is attached to the residence and access to it is intended only through the residence. Appellant's presence on the victim's balcony was entry onto a "separately secured or occupied portion" of her apartment.[2] As a result, the evidence was sufficient to support appellant's convictions for criminal trespass and conspiracy to commit criminal trespass.

■ ¶ 9 Appellant next complains that the trial court erred in excluding defense evidence about several burglaries in a neighboring housing complex that occurred on the same night as this incident. At trial, appellant offered several witnesses from the neighborhood who would have testified to a rash of burglaries that occurred sometime during the night appellant was arrested. In all of the cases, the burglar(s) gained entry through residents' garage doors with the use of pry tools and

---

1. Appellant was also found guilty of loitering/prowling at nighttime. He was acquitted of burglary.

2. In *Commonwealth v. Jackson,* 401 Pa.Super. 426, 585 A.2d 533 (1991), the defendant was convicted of burglary, but argued that his sentence was illegal because the statute required that the victim be present in a "structure adapted for overnight accommodation." *Id.* at 428, 585 A.2d 533. The victim in

*Jackson* was on the back porch of the residence at the time of the break-in and the defendant relied on Cannon to argue that a porch is not part of a structure but instead is like a back-yard. The Jackson court rejected the argument and noted the difference between a yard and a porch: "The porch is attached to the dwelling and forms part of the contiguous structure." *Id.* at 429, 585 A.2d 533. Although *Jackson* is not directly on point, its reasoning is persuasive.

removed items from the garage. Although none of the witnesses would have been able to state what time the burglaries took place, one witness would have testified that her motion sensor light was triggered in the early morning hours.[3] Police discovered the majority of the stolen items in the woods nearby.

¶ 10 Appellant claims that he was entitled to inform the jury about the other burglaries in an effort to show that someone else, not him, was on the victim's balcony that night. He relies primarily on *Commonwealth v. Rini*, 285 Pa.Super. 475, 427 A.2d 1385 (1981), which the trial court aptly summarized in its opinion:

> In *Rini*, the defendant was charged with multiple counts of indecent exposure occurring on separate days. The incidents were factually similar. One of the counts of indecent exposure was ultimately withdrawn when a witness to that count clearly indicated that the defendant was not the perpetrator of this earlier crime. The withdrawn count was a separate incident that occurred six days prior to the charge for which the defendant ultimately went to trial. The Superior Court ruled that the misidentification of the defendant at a similar incident could be used at his trial on the other charges to support a misidentification defense.

Trial Court Opinion, 1/29/04, at 5.

¶ 11 The *Rini* court reasoned that because the evidence proffered by the defendant established that another person committed a crime "strikingly similar" to the one the appellant was alleged to have committed just days later, that evidence was relevant and probative of the defendant's guilt. The *Rini* court was careful to note that the other crime bore a "highly detailed similarity to the crime with which the defendant was charged." *Id.* at 480, 427 A.2d 1385. The logic underlying *Rini* was that the evidence at issue tended to "prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial." *Id.*

¶ 12 It is clear that this case is unlike *Rini* as there is no evidence of a similar crime alleged to have been committed by appellant and for which he was later cleared. Nonetheless, *Rini* stands for the proposition that criminal defendants are entitled to offer evidence that some other person committed a similar crime at or around the same time they are alleged to have committed a crime. Evidence to establish this fact is admissible after consideration of two distinct factors that coalesce to establish its relevance and probative value. *Commonwealth v. Nocero*, 399 Pa.Super. 346, 582 A.2d 376 (1990), *appeal denied*, 527 Pa. 643, 593 A.2d 416 (1991). Those factors: are 1) the lapse of time between the commission of the two crimes; and 2) the resemblance between the methodologies of the two crimes. *Id.* at 378. Thus, even if the time lapse between commission of the crimes is brief (as it is in this case), the evidence is not admissible unless the nature of the crimes is "so distinctive or unusual as to be like a signature or the handiwork of the same individual." *Id.*

¶ 13 With this standard in mind, we conclude that the burglaries in the neighboring housing complex and the crime in this case were not so distinctive or unusual as to constitute "signature crimes." Although all of the burglaries in the other

---

**3.** Apparently, this witness also would have testified that the light frequently went on for various other reasons throughout the night.

Appellant and his companion were arrested and in police custody before midnight.

area were themselves similar enough to be considered distinctive (in that in all of the cases the perpetrators used pry tools to open garage doors and then remove items from the garages) the conduct in this crime was different. It involved no forced entry; it involved no tools. None of the victim's possessions was found in the burglary cache discovered in the woods.[4]

¶ 14 The *Nocero* court noted that a trial court has "broad power" to determine whether and to what extent it will admit evidence of this type and such matters are committed to the sound discretion of the trial judge. *Id.* Our review of the record leads us to conclude that the trial court did not abuse its discretion in finding that evidence of the burglaries was not so distinctive as to warrant admission. Appellant is not entitled to relief.

¶ 15 Appellant's final claim is that the identification by the victim should have been suppressed because: 1) Officer Smith was outside his jurisdiction when he made the stop and so violated the Municipal Police Jurisdiction Act (MPJA); 2) the stop was made without the requisite probable cause; and 3) the identification was overly suggestive.

¶ 16 With respect to the first two assertions, we dismiss them summarily. Several witnesses testified that a call for assistance in Whitehall was made over the police radio. Officer Smith of South

Whitehall received that broadcast and, because he was so close to the scene, proceeded to Whitehall Township to aid the officers there. His presence was proper under the MPJA, specifically 42 Pa.C.S.A. § 8953(a)(3).[5] Once lawfully present in the township, Officer Smith observed appellant's car and stopped it pursuant to 42 Pa.C.S.A. § 8953(a)(5).[6] The fact that Officer Smith was employed by South Whitehall Township did not invalidate his apprehension of appellant in Whitehall Township or the victim's subsequent identification at that same location.

¶ 17 With respect to the legal basis for Officer Smith's stop of appellant's vehicle, we find no error. At the time of the stop Officer Smith knew that Whitehall police were searching for two young, white males who fled in the direction of Overlook Road. Within minutes, Officer Smith observed a car in that area, the only car on the road, and in it were two young white males. These observations, taken in their totality, were sufficient to lead the officer to believe that appellant was involved in criminal activity, thus permitting a stop for further investigation. *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043 (1995). The stop was lawful.

¶ 18 Finally, we address appellant's claim that the manner of the identification was so suggestive that it was unreliable and so should have been suppressed. As

---

4. The victim here informed police that a BMX bicycle was missing from her balcony. The bike was not among the burglary items and apparently was never recovered.

5. Section 8953(a)(3) of the MPJA grants an officer the power and authority to enforce the laws of the Commonwealth in another jurisdiction where he "has been requested to aid or assist any local, State of Federal law enforcement officer or park police officer or otherwise has probable cause to believe that the other officer is in need of aid or assistance."

6. Section 8953(a)(5) of the MPJA grants an officer the power and authority to enforce the laws of the Commonwealth in another jurisdiction where he is "on official business and views an offense or has probable cause to believe that an offense has been committed, and makes a reasonable effort to identify himself as a police officer and which offense is a felony, misdemeanor, breach of the peace or other act which presents an immediate clear and present danger to persons or property."

noted above, Officer Davis brought the victim to the intersection where police had stopped appellant's car. The victim, seated in Officer Davis's patrol car, watched appellant and Martnick exit their vehicle. She immediately identified them as the perpetrators and continued to do so even as another officer repeatedly questioned whether she was certain. Appellant argues that this identification procedure, occurring as it did with the suspects as the "only non-uniformed individuals in the area," was unlawfully suggestive.

 ¶ 19 Appellant concedes that "evidence garnered as a result of a suggestive identification may be introduced into evidence where the identification is reliable under the totality of the circumstances." Appellant's Brief at 29–30 (relying on *Commonwealth v. Youngblood,* 241 Pa.Super. 72, 359 A.2d 456 (1976)). The factors to be considered in determining admissibility of the identification claimed to be overly suggestive include: 1) the witness's opportunity to observe the perpetrator at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's description; 4) the level of certainty the witness demonstrates; and 5) the lapse of time between the crime and the confrontation. *Commonwealth v. Meachum,* 711 A.2d 1029, 1034 (Pa.Super.), *appeal denied,* 556 Pa. 689, 727 A.2d 1119 (1998).

¶ 20 Rather than developing an argument based on these factors, appellant argues that under *Youngblood* a totality inquiry is inappropriate where "the identification is the product of an illegal seizure." Appellant's Brief at 20. He then returns to his arguments, set out above, that the initial detention was illegal. We already have resolved those claims against appellant. Further, our own review of the record leads us to conclude that the totality of the circumstances militate in favor of admitting the victim's identification here.

¶ 21 The evidence established that Ms. Norwood had ample opportunity to view the perpetrators' faces on the balcony that night. She did not waver in her identification, despite questioning on the scene, and the amount of time between the crime and the confrontation was only about fifteen or twenty minutes. In light of all of these factors, we find no error in the court's decision to deny suppression of the identification.

¶ 22 Because appellant has offered no legal basis for appellate relief, we are compelled to affirm the judgment of sentence.

¶ 23 Judgment of sentence affirmed.