J-S55021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MONTEL J. JOHNSON | |
| Appellant | No. 3398 EDA 2017 |

Appeal from the Judgment of Sentence imposed October 16, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-CR-0004576-2016

BEFORE:  OLSON, STABILE, JJ., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.:                    **FILED NOVEMBER 30, 2018**

Appellant, Montel J. Johnson, appeals from the October 16, 2017 judgment of sentence imposing an aggregate 15 to 30 years of incarceration for robbery, burglary, conspiracy, theft by unlawful taking, receiving stolen property, recklessly endangering another person, and animal cruelty.[1]  We affirm.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> In April of 2016, Robert Ferry, his girlfriend, Nikki Dixon, and Ms. Dixon's seven-year-old daughter resided in a single-family residence located at 29 Goldengate Road, Levittown, Bristol Township, Bucks County.  On April 18, 2016, at approximately 4:30 a.m., Mr. Ferry was awakened when his dog began to bark.

---

[1]   18 Pa.C.S.A. §§ 3701, 3502, 903, 3921, 3925, 2705, and 5511, respectively.  Section 5511, governing animal cruelty, was repealed and replaced by 18 Pa.C.S.A. § 5533 effective August 28, 2017.

Mr. Ferry went downstairs to investigate and saw his former neighbor, Brittany Dorio, standing at the carport door, peering inside the home. Mr. Ferry went outside to speak to Dorio and discovered that his motorcycle, which had been parked in the carport, had been moved and was now parked near the end of the driveway, behind where Ms. Dixon's SUV was parked. Mr. Ferry walked down the driveway toward the motorcycle and was confronted by [Appellant] who appeared from behind the SUV, brandishing a handgun. [Appellant] pointed the handgun at Mr. Ferry and walked toward him, forcing Mr. Ferry to retreat toward the carport. [Appellant] told Mr. Ferry that he 'was in a bad way.' Mr. Ferry told [Appellant] there were children in the home. He also told [Appellant] that he had surveillance cameras and that Dorio could confirm that fact. Undeterred, [Appellant] demanded money and stated he knew Mr. Ferry kept money inside of the home. While the gun was pointed at Mr. Ferry's face, [Appellant] 'racked the slide' of the gun, chambering a round from the clip into the chamber, making the handgun ready to fire. Mr. Ferry backed up to the door and took hold of the door handle which fell loose into his hand. Mr. Ferry's dog then pushed through the door into the carport. [Appellant] backed up and fired several shots at the dog and immediately fled on foot. Mr. Ferry threw the door handle at [Appellant] and gave chase. He was unable to keep up but he did hear a car door shut and see a small, four-door Saturn 'take off,' and drive up the street with no headlights on. Ms. Dixon called 911.

Trial Court Opinion, 2/8/18, at 2-3 (record citations omitted).

At trial, Ferry identified Appellant as the perpetrator. Dorio, after entering a plea agreement, testified and confirmed that Appellant was the perpetrator. She stated that she and Appellant were at Ferry's home twice during the early morning of April 18, 2016. The first time, they removed some items from a parked car and left. The second time, Dorio served as lookout while Appellant dragged Ferry's motorcycle down the driveway. DNA analysis confirmed that Appellant's DNA was on the handles of Ferry's motorcycle.

Approximately two months after the incident in question, and before Appellant's arrest, Ferry's motorcycle was stolen.

On May 1, 2017, at the conclusion of trial, a jury found Appellant guilty of the aforementioned offenses. On May 15, 2017, the trial court imposed an aggregate ten to twenty years of incarceration. On October 16, 2017, after granting reconsideration, the trial court imposed the sentence presently at issue in this timely appeal. Appellant raises a single assertion of error:

> Whether the trial court erred in denying the defense the ability to question the Commonwealth witnesses regarding the later theft of the motorcycle that was the exact property which related to [Appellant's] conviction[s?]

Appellant's Brief at 4.[2] The trial court ruled the subsequent theft of the motorcycle irrelevant.

We review a trial court's evidentiary ruling for abuse of discretion. *Commonwealth v. Ratushny*, 17 A.3d 1269, 1272 (Pa. Super. 2011). "Criminal defendants are entitled to offer evidence that some other person committed a similar crime at or around the same time they are alleged to have committed a crime." *Commonwealth v. Palagonia*, 868 A.2d 1212, 1216 (Pa. Super. 2005), *appeal denied*, 880 A.2d 1238 (Pa. 2005); Pa.R.E. 401 and 402. The admissibility of such evidence depends on "1) the time lapse

---

[2] We note with disapproval that Appellant's brief omits many items required under the Rules of Appellate Procedure, including a statement of questions involved. Pa.R.A.P. 2116; *and see generally* Pa.R.A.P. 2111-2119. The assertion of error quoted above is the heading of Appellant's argument section.

between the commission of the two crimes; and 2) the resemblance between the methodologies of the two crimes." *Id.* "[E]ven if the time lapse between the commission of the crimes is brief … the evidence is not admissible unless the nature of the crimes is so distinctive or unusual as to be like a signature or the handiwork of the same individual." *Commonwealth v. Bergen*, 142 A.3d 847 (Pa. Super. 2016).

In *Palagonia*, the victim spotted the defendant on her balcony, which was attached to her residence and meant to be entered from inside the residence. *Palagonia*, 868 A.2d at 1215. A rash of other burglaries occurred nearby on the same night. *Id.* In those cases, the burglars used pry tools to enter the victims' garages. *Id.* at 1215-16. This Court held that the garage burglaries and the crime at issue "were not so distinctive or unusual as to constitute 'signature crimes.'" *Id.* at 1216. Unlike the burglaries, the crime at issue involved no tools and no forced entry, and none of the victim's possessions was found in the cache of items recovered during the burglary investigations. *Id.* at 1217.

In *Bergen*, the defendant, a passenger in a car shortly before he was arrested, wanted to demonstrate that the involved gun belonged to the driver. *Bergen*, 142 A.3d at 851. The driver had a ten-year-old conviction for unlawful possession of a firearm. *Id.* This Court upheld the trial court's

exclusion of the driver's prior conviction because it was old and because the facts leading to the conviction were unclear. *Id.*[3]

Instantly, the attempted theft and successful theft of Ferry's motorcycle took place only two months apart. However, the record is devoid of any evidence of the methodologies employed, such that a court could conclude the two offenses constituted a signature crime. Indeed, Appellant proffered no evidence of the circumstances of the motorcycle theft, only the fact that it was stolen. Under these circumstances, the trial court correctly ruled that a successful theft two months after an attempted theft of the same motorcycle is not admissible under *Palagonia* and *Bergen* because the subsequent theft was irrelevant.

"Evidence is relevant if […] it has any tendency to make a fact more or less probable than it would be without the evidence; and […] the fact is of consequence in determining the action." Pa.R.E. 401. Here, the consequential fact in question is Appellant's identity as the perpetrator, and the evidence on that fact is overwhelming. Three eyewitnesses implicated Appellant. Eyewitness Dorio stated that Appellant dragged Ferry's motorcycle down

---

[3] We observe that a similar case is presently pending before the Pennsylvania Supreme Court. *Commonwealth v. Gill*, 158 A.3d 719 (Pa. Super. 2017), *appeal granted*, 176 A.3d 848 (Pa. 2017). In *Gill*, this Court held that the trial court erred in admitting evidence of a similar burglary. The defendant claimed that, in both cases, a similar amount of money was stolen from a lockbox in the same residence of the same victim; that the victim had a key to the lockbox; that there were no signs of forced entry in either case; and that the perpetrator was probably someone the victim knew. *Id.* at 722-23.

Ferry's driveway while she watched. Appellant's DNA was on the handles of Ferry's motorcycle. Therefore, any other evidence on this point cannot make Appellant's identity any more or less probable. *See* Pa.R.E. 401. The trial court did not err or abuse its discretion in excluding evidence of the subsequent theft because, on the facts of this case, it had no bearing on the identity of the instant perpetrator.[4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/18

---

[4] Inasmuch as Appellant was still at large, the jury could have viewed the subsequent theft as incriminating rather than exculpatory.