J-S33011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC YALE | : | |
| | : | |
| Appellant | : | No. 472 MDA 2018 |

Appeal from the Judgment of Sentence November 17, 2017
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0001152-2017

BEFORE:  LAZARUS, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 09, 2019**

Eric Yale appeals from the judgment of sentence, entered in the Court of Common Pleas of Luzerne County, after a jury convicted him of two counts of possession with intent to manufacture or deliver a controlled substance (PWID),[1] and one count each of possession of a controlled substance,[2]

---

[1] 35 P.S. § 780-113(a)(30) (pertaining to methamphetamine); and 35 P.S. § 780-113.1(a)(3) (pertaining to precursor chemicals with the intent to unlawfully manufacture a controlled substance).

[2] 35 P.S. § 780-113(a)(16).

possession of drug paraphernalia,[3] and risking catastrophe.[4]   After careful review, we affirm.

On March 21, 2017, Officer Jeffrey Ference of the Wilkes-Barre City Police Department assisted US Marshalls in serving an arrest warrant on Larry Thompson at Yale's mother's home.  While searching for Thompson, Officer Ference entered Yale's bedroom and found Yale, methamphetamine, and items consistent with the "one-pot" method[5] of manufacturing methamphetamine, including lighter fluid, Drano, lithium batteries, and bottles containing chemicals.  Officer Ference then discovered Thompson hiding in Yale's bedroom closet, and took both Thompson and Yale into custody.  Officer Ference subsequently contacted the clandestine lab response team, a specialized unit of the Pennsylvania State Police, to dispose of the above-mentioned materials, owing to their propensity to catch on fire or emit toxic gasses.  While in custody, after being read his **Miranda** rights, Yale admitted the items were found in his bedroom and were there to manufacture

_____

[3] 35 P.S. § 780-113(a)(32).

[4] 18 Pa.C.S.A. § 3302(b).

[5] The one-pot method is a common method of methamphetamine production where precursor chemicals are mixed together in a plastic soda bottle.  **See** N.T. Trial, 9/26/17, at 45–46 ("The way people make methamphetamine right now is called the one-pot method[.]  [I]ngredients are mixed together . . . in a plastic soda bottle.  These soda bottles fail a lot; they light on fire, they ignite, they injure people, they send people to the burn unit.").

methamphetamine. The Commonwealth charged Yale and Thompson under accomplice and principal theories of liability.[6]

At trial, Yale denied any involvement in producing methamphetamine and claimed the contraband belonged to Thompson. He attempted to present evidence demonstrating Thompson pleaded guilty to producing methamphetamine using the "one-pot" method on November 3, 2015, and further, that Thompson was charged with additional methamphetamine-related offenses on February 6, 2017. The trial court precluded evidence concerning either event as irrelevant to the instant case and confusing to the jury.

The jury found Yale guilty of the above-mentioned charges on September 26, 2017. On November 17, 2017, the trial court sentenced Yale to an aggregate of 60 to 144 months' incarceration. On the same day, Yale filed post-sentence motions, which the trial court denied on February 15, 2018. Yale timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Yale raises the following issues for our review:

1. Whether the evidence as to all charges, as a matter of law, was insufficient to support any conviction, where the evidence

---

[6] As a general rule, "[a] person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally responsible, or both." 18 Pa.C.S.A. § 306(a). An accomplice is defined, in relevant part, as someone who, "with the intent of promoting or facilitating the commission of [an] offense . . . aids or agrees or attempts to aid such other person in planning or committing it[.]" 18 Pa.C.S.A. § 306(c).

established no more than mere presence of [Yale, and not] that he was the perpetrator, either as an accomplice or principal, contrary to the Due Process provisions of the United States Constitution?

2. Did the trial court err as a matter of law or abuse its discretion in precluding, contrary to Pa.R.E. 404, the defense from presenting evidence that [] Thompson, an individual found at the scene, had been previously arrested for similar offenses and possessed knowledge of how to manufacture methamphetamine, to demonstrate that he was the perpetrator of the present charges?

Brief of Appellant, at 2.

Yale first argues the Commonwealth failed to present sufficient evidence to establish his intent to control the contraband at issue, and consequently, failed to prove he constructively possessed the items underpinning his convictions—namely, precursor chemicals, methamphetamine manufacturing equipment, and methamphetamine. *See id.* at 8, 14.

Our standard of review with regard to sufficiency claims is well-settled:[7]

_____

[7] We note our displeasure with the trial court's recitation of the standard for sufficiency claims, which, in part, reads as follows: "*Only* where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, is it deemed insufficient as a matter of law." Pa.R.A.P. 1925(a) opinion, 10/26/18, at 3 (emphasis added) (citing *Commonwealth v. Robinson*, 817 A.2d 1153, 1158 (Pa. Super. 2003)). This sentence is largely a direct quotation from *Robinson*, deviating only in its addition of the word "only." *Compare id. with Robinson*, *supra* at 1158. Adding the qualifier "only" drastically changes the meaning of the quotation, which itself details a sufficient condition, not a necessary condition, for finding the evidence insufficient. *Robinson*, *supra* at 1158. The test for evidentiary sufficiency, as properly stated in *Robinson*, is evaluating whether the record establishes "each

- 4 -

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt[.] When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

**Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).

The possession of contraband—an element at issue in each of Yale's convictions[8]—can be established by demonstrating actual, constructive, or joint constructive possession of contraband. **Commonwealth v. Mudrick**, 507 A.2d 1212, 1213 (Pa. 1986). Our Supreme Court has previously defined constructive possession as follows:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be

---

material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Id.** (quotation omitted).

[8] Yale's PWID and possession of a controlled substance convictions required the Commonwealth to prove he possessed methamphetamine or precursor chemicals. 35 P.S. § 780-113(a)(30) and 35 P.S. § 780-113.1(a)(3); 35 P.S. § 780-113(a)(16). Yale's possession of drug paraphernalia and risking catastrophe convictions required the Commonwealth prove his possession of the drug paraphernalia for the purpose of manufacturing or producing methamphetamine. 35 P.S. § 780-113(a)(32); 18 Pa.C.S.A. § 3302(b).

- 5 -

established by the totality of the circumstances[.] [C]onstructive possession may be found in *either or both actors if contraband is found in an area of joint control and equal access*.

*Id.* (citations omitted) (emphasis added).

Where more than one person has equal access to contraband, presence at the scene of the crime does not in and of itself prove conscious dominion over prohibited items. ***Commonwealth v. Ocasio***, 619 A.2d 352, 354 (Pa. Super. 1993). "[T]he Commonwealth must introduce evidence demonstrating either appellant's participation in the drug related activity *or evidence connecting appellant to the specific room or areas where the drugs were kept.*" *Id.* at 354–44 (emphasis added); *see* ***Commonwealth v. Keefer***, 487 A.2d 915, 918 (Pa. Super. 1985) ("The circumstances of the seizure of the instant drugs were sufficient to provide an inference that appellant maintained control over the bedroom in which they were seized, and, thus, over the drugs.").

Here, the officers found materials used in the production of methamphetamine, as well as the finished product. N.T. Trial, 9/26/17, at 27. Yale admitted the contraband was for the production of methamphetamine. *Id.* at 31. Further, Yale admitted the room in which the items were found was his bedroom. *Id.* at 31, 89. Viewing this evidence in the light most favorable to the Commonwealth, we conclude the evidence was sufficient to enable the jury to find Yale constructively possessed the contraband underlying his convictions. ***See Keefer***, ***supra*** at 918 (finding defendant constructively possession drugs found in his bedroom).

Next, Yale claims the trial court erred by precluding evidence of Thompson's previous arrests for methamphetamine-related offenses, which he sought to admit to prove Thompson's sole responsibility for the presence of contraband in Yale's bedroom. Brief of Appellant, at 14.

The Supreme Court previously articulated the standard by which we evaluate evidentiary rulings as follows:

> It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion. Thus, the Superior Court may reverse an evidentiary ruling only upon a showing the trial court abused that discretion. A determination that a trial court abused its discretion in making an evidentiary ruling may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Further, discretion is abused when the law is either overridden or misapplied.

*Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014).

"A defendant has a fundamental right to present evidence[,] provided that the evidence is relevant and not subject to exclusion under one of our established evidentiary rules. Evidence is relevant if it tends to prove or disprove some material fact or tends to make a fact at issue more or less probable." *Commonwealth v. McGowan*, 635 A.2d 113, 115 (Pa. 1993). Further, "[i]t is well[-]established that evidence which tends to show that the crime with which a defendant is charged was committed by someone else is relevant and admissible. In this regard, the defense may introduce evidence that someone else committed a crime which bears *a highly detailed similarity*

to the crime with which the defendant is charged." ***Id.*** (emphasis added) (citing with approval ***Commonwealth v. Rini***, 427 A.2d 1385, 1388 (Pa. Super. 1981)).

In ***Rini***, this Court established a defendant's right to introduce evidence of another individual committing a "strikingly similar" crime to the one at issue on trial, reasoning as follows:

> The Commonwealth is permitted in such cases to introduce evidence that the defendant committed crimes other than the one charged, because their highly detailed similarity makes their probative value in showing that the defendant committed the crime charged so great as to outweigh even the substantial danger of prejudice to the defendant. When the defense offers evidence that someone other than the defendant committed a crime with a detailed similarity to the one charged, the probative value is equally strong in showing that the defendant did not commit the crime charged, and the argument for admissibility is even stronger, because there is no prejudice to weigh against this equally strong probative value.

***Rini***, ***supra*** at 1388.

Following ***Rini***, Superior Court case law established a criminal defendant's right to offer such evidence, if the following two factors established its relevance and probative value: "1) the lapse of time between the commission of the two crimes; and 2) the resemblance between the methodologies of those two crimes." ***Commonwealth v. Palagonia***, 868 A.2d 1212, 1216 (Pa. Super. 2005). [9] Even if the proffered third-party crime

---

[9] In a recent concurrence, Justice Wecht cast doubt, not only on the vitality of the two-part test outlined in ***Palagonia***, but on whether so-called "reverse

and the charged crime occurred close in time to one another, "the [proffered] evidence is not admissible unless the nature of the crimes is so distinctive or unusual as to be like a signature or the handiwork of the same individual." *See id.* (finding evidence insufficiently similar to permit admission where proffered evidence of burglaries committed by a third party involved tools and burglary at issue did not involve forced entry); *see also Commonwealth v. Nocero*, 582 A.2d 376, 379 (Pa. Super. 1990) (finding "ripping a water

_____

404(b)" evidence should incorporate any principles whatsoever from case law related to Pa.R.E. 404(b). *See Commonwealth v. Gill*, 206 A.3d 459, 468-74 (Pa. 2019) (Wecht, J., concurring) ("[T]he admissibility of 'reverse 404(b)' evidence should not be governed by Rule 404(b) or subject to the standards imposed on Rule 404(b) case law"); *see also id.* at 473 (defining "reverse 404(b)" evidence as "evidence of a crime committed by a third party that is similar to the crime for which the defendant stands accused, and that a defendant seeks to admit for the purpose of establishing that the defendant was not the perpetrator of the charged offense."). Justice Wecht posits, since *Rini*, where we first recognized a defendant's right to introduce evidence of a crime bearing a "highly detailed similarity" to the one at issue, Superior Court's case law has diverged from the Supreme Court's; in doing so, the strictures of Rule 404(b), which exist to prevent the Commonwealth from introducing impermissible character evidence, have been improperly applied in the context of "reverse 404(b) evidence, [where] the defendant's character is simply not implicated." *Id.* He asserts such evidence ought to be admissible so long as it passes the "liberal relevance hurdle and survives Rule 403 balancing[.]" *Id.* at 473–74. While Justice Wecht's concurring opinion sheds a great deal of light on the development of a poorly-defined branch of the law of evidence, we remain bound by *Palagonia*, and thus, obligated to apply the two-part test contained therein to Yale's appeal. *See Commonwealth v. Minor*, 647 A.2d 229, 231 n.3 (Pa. Super. 1994) ("Non-majority decisions of the Pennsylvania Supreme Court are not binding on lower courts."); *see also Commonwealth v. Hull*, 705 A.2d 911, 912 (Pa. Super. 1998) ("It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court.").

fountain from its base is not such a unique type of vandalism that the jury could infer [that] the same person did both acts.").

Yale argues the trial court abused its discretion by precluding evidence of Thompson's October 12, 2016 arrest and November 3, 2015 guilty plea, both of which involved Thompson's use of the "one-pot" method to produce methamphetamine. Brief of Appellant, at 19–22. We, however, agree with the trial court's reasoning; beyond Thompson's cases involving methamphetamine production, "[Yale] did not demonstrate how the present cases against [Yale] and [Thompson] had such detailed similarities or the same methodology as the . . . cases against [Thompson] to show any common scheme, plan or design which would have exonerated [Yale.]" Pa.R.A.P. 1925(a) Opinion, 10/26/18, at 9. Consequently, Yale fails to demonstrate how Thompson's prior bad acts are so "strikingly similar" to his own charged crimes as to establish Thompson as "the person charged with the commission of the crime on trial." **Rini**, **supra** at 1388; **see** N.T. Trial, 9/26/17, at 45 (describing one-pot method of methamphetamine production as "[t]he way people make methamphetamine right now[.]"). Our review of the record leads us to conclude that the trial court did not abuse its discretion in finding that evidence of Thompsons prior methamphetamine-related activity was not so distinctive as to warrant admission. **Palagonia**, **supra** at 1216–17. Yale, therefore, is not entitled to relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/9/2019