J-S14020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
v. :
:
:
:
LAMAR B. WILLIAMS :
:
Appellant : No. 610 EDA 2018

Appeal from the Judgment of Sentence December 1, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012430-2015

BEFORE: LAZARUS, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED AUGUST 09, 2019**

Appellant Lamar B. Williams appeals from the judgment of sentence imposed after a jury convicted him of aggravated assault, conspiracy, criminal trespass, and simple assault.[1] On appeal, Appellant argues that the trial court erred by denying his motion to suppress identification evidence, limiting the scope of cross-examination at the suppression hearing and at trial, failing to grant a mistrial based on an alleged discovery violation, and denying his request for a jury instruction on adverse inference and alternate identification. We affirm.

The trial court summarized the facts of this matter as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a), 903, 3503(a)(1)(ii), and 2701(a), respectively.

On July 27, 2015, at about 2:00 in the morning, Calvin Davis [(the victim)] had a phone and text conversation with his sister about money she owed him. At about 2:30[ a.m.], as he lay on his couch in his apartment, [the victim] was about to fall asleep when he heard a knock at his door. When he looked out the window, he saw his sister's fiancé, Marquise Purnell (aka Purnell-Childs), with three other guys, including Appellant and his co-defendant Rafiq Purnell. The men proceeded to kick in [the victim's] door and enter his apartment. Appellant was unknown to [the victim] before these events.

[The victim] picked up a broomstick to protect himself inside his apartment as the door was being kicked in. As the men rushed in, Appellant struck [the victim] in the face. Appellant then took the stick from [the victim] and swung it at him, injuring [the victim's] eye. The others then proceeded to hit [the victim]. During this incident, [the victim] was able to clearly see the faces of his attackers.

After the beating, Appellant took a picture of [the victim's] face and told him: "If you say something, it's going to happen to you again." As the picture was being taken, [the victim] was looking right at Appellant. Appellant then picked up [the victim's] phone from the floor. [The victim] then went into the bathroom to try to stop the bleeding of the injury to his eye. When he returned, the apartment had been ransacked, and his phone was gone, as well $50 that had been on the couch.

[The victim] went outside, with another phone to try to call the police, but it had been broken. Appellant and the others who were outside left. A neighbor called the police then let [the victim] use his phone to call his mother. [The victim's] mother, Kyra Davis, a Philadelphia Police Officer, also came to the scene. The police arrived along with emergency medical personnel and [the victim] was taken to the hospital, where he was treated for the injury to his eye, receiving 5-6 stitches. . . .

\* \* \*

After being released from the hospital, [Appellant] went to Northwest Detectives where he gave a written statement.

At some point prior and subsequent to his being interviewed by Detectives, Kyra Davis retrieved photos from the Facebook page of Marquise Purnell, her daughter's fiancé and one of the people

who assaulted [the victim]. She showed the photos to her son, who identified his assailants, including Appellant.

On October 29, 2015, [the victim] returned to the Detective Division, where he identified Appellant as one of his assailants. Mr. Davis also identified Rafiq Purnell in a different photo array.

Trial Ct. Op., 6/6/18, at 4-6.

On December 29, 2015, the Commonwealth filed an information charging Appellant with aggravated assault, robbery, burglary, conspiracy, criminal trespass, theft by unlawful taking, terroristic threats, simple assault, recklessly endangering another person, and criminal mischief. On April 6, 2017, Appellant filed a motion to suppress the identification evidence because he had "not been provided any discovery or otherwise put on notice as to how he was identified." *See* Suppression Mot., 4/6/17, at 3 (unpaginated).

On September 14, 2017, Appellant filed an amended suppression motion asserting that the identification was "wildly suggestive and clearly tainted the subsequent photo array." *See* Amended Mot. to Suppress, 9/14/17, at 5 (unpaginated). Specifically, he argued that although the victim identified Appellant in a photo array, it was only after the victim's mother (Ms. Davis) "had already shown him the Facebook photo of [Appellant] and told him that [Appellant] was one of the unknown assailants." *Id.* at 3. He also asserted that there was "no independent basis for an in-court identification." *Id.* at 5.

On September 25, 2017, the trial court held a suppression hearing, at which Ms. Davis and the victim testified. After the victim testified that he was

- 3 -

struck four or five times during the assault, Appellant attempted to explore discrepancies in the victim's testimony from the preliminary hearing. N.T., Suppression Hr'g, 9/25/17, at 33. At that time, the trial court interjected and instructed Appellant that "[i]t's a motion to suppress. I really don't care about any discrepancies in how many times he says he was struck." *Id.*

At the conclusion of the hearing, the trial court denied Appellant's motion. The trial court found that there was "no evidence that the identification procedure was suggestive either on the part of [Ms.] Davis or the two detectives later on." *Id.* at 97. Further, the trial court concluded that the victim had an independent basis for his identification of Appellant based on his personal observations during the assault. *Id.* at 98.

The following day, the matter proceeded to a jury trial. On cross-examination by Appellant, Ms. Davis testified that she sent the Facebook photos to the investigating detectives via email. N.T. Trial, 9/26/17, at 223. After the jury exited for the day, Appellant moved for a mistrial based on the Commonwealth's failure to provide a copy of the email in discovery. *Id.* at 234. Appellant argued that the nondisclosure violated the discovery rules and constituted a *Brady*[2] violation. *Id.* The Commonwealth asserted that it was not aware of any additional paper trail beyond the photographs themselves, which were provided during discovery. *Id.* at 236-37. The trial court denied Appellant's motion and concluded that "under the circumstances stated, there

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

is no discovery violation." *Id.* at 237. At the conclusion of trial on September 27, 2017, Appellant asked the trial court to instruct the jury on the failure to produce evidence and to issue a **Kloiber**[3] instruction. N.T. Trial, 9/27/17, at 71. The trial court denied both requests. *Id.*

The jury convicted Appellant on September 28, 2017. On December 1, 2017, the trial court imposed an aggregate sentence of three to six years' state incarceration followed by four years' probation. Appellant timely filed both a post-sentence motion and a motion for reconsideration. On January 30, 2018, the trial court denied Appellant's motion for reconsideration.

On February 12, 2018, Appellant filed a notice of appeal.[4] The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement on March 5, 2018. On March 6, 2018, the trial court denied Appellant's post-sentence motion. The trial court reissued its Rule 1925(b) order on March 12, 2018. Both Appellant and the trial court subsequently complied with Rule 1925.[5]

---

[3] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

[4] Appellant's notice of appeal was docketed while his post-sentence motion was still pending with the trial court. However, because the trial court subsequently denied Appellant's post-sentence motion, we will treat Appellant's notice of appeal as timely. **See Commonwealth v. Ratushny**, 17 A.3d 1269, 1271 n.4 (Pa. Super. 2011) (stating that when the trial court denies an appellant's post-sentence motion after the filing of a premature notice of appeal, this Court will treat the appellant's premature notice of appeal as having been filed on the date of the order disposing of the post-sentence motion).

[5] Of the issues raised in the trial court, Appellant has abandoned his claims regarding the sufficiency and weight of the evidence. **See Commonwealth**

- 5 -

Appellant raises the following questions for our review:

1. Did the trial court abuse its discretion in denying Appellant's motion to suppress identification?

2. Did the trial court abuse its discretion in disallowing portions of cross-examination during the motion to suppress and trial?

3. Did the trial court abuse its discretion for failing to grant a mistrial or other remedy when the Commonwealth failed to provide mandatory discovery that was alluded to during trial?

4. Did the trial court abuse its discretion for failing to honor the Appellant's request for a proposed point of charge regarding an adverse interest?

5. Did the trial court abuse its discretion for failing to honor the Appellant's request for a proposed point of charge regarding identification?

Appellant's Brief at 6.

In his first issue, Appellant argues that the trial court abused its discretion by denying his motion to suppress identification evidence. *Id.* at 13. He asserts that "[t]here was an incredible amount of suggestiveness when the witness was confronted with Facebook photos by his mother." *Id.* Appellant also contends that the victim "spoke to the police two days after the incident and indicated that his mother showed him Facebook photos[,]" but at trial, both the victim and his mother testified that she "retrieved the Facebook photos two weeks later." *Id.* Finally, Appellant claims that "there was a real question as to whether the [victim] was able to properly observe

---

*v. Rodgers*, 605 A.2d 1228, 1239 (Pa. Super. 1992) (stating, "[w]e must deem an issue abandoned where it has been identified on appeal but not properly developed in the appellant's brief" (citation omitted)).

[A]ppellant[,] as his vision was blurry after he was struck" and the victim did not know Appellant prior to the incident. *Id.*

> In reviewing the denial of a suppression motion, our review
>
> is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.
>
> Although we are bound by the factual and the credibility determinations of the trial court which have support in the record, we review any legal conclusions *de novo*.

*Commonwealth v. Wells*, 916 A.2d 1192, 1194–1195 (Pa. Super. 2007).

With respect to "the propriety of identification evidence, the central inquiry is whether, under the totality of the circumstances, the identification was reliable." *Commonwealth v. Brown*, 23 A.3d 544, 558 (Pa. Super. 2011) (*en banc*) (citation omitted). In making that determination, the trial court must consider the following factors: "(1) the witness's opportunity to observe the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's description; (4) the level of certainty the witness demonstrates; and (5) the lapse of time between the crime and the confrontation." *Commonwealth v. Palagonia*, 868 A.2d 1212, 1218 (Pa. Super. 2005).

"Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors."

The suppression court may suppress an out-of-court identification only where, after considering all the relevant circumstances, "the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." The most important factor in addressing the reliability of an identification is the witness's opportunity to observe the perpetrator at the time of the crime.

*Commonwealth v. Milburn*, 191 A.3d 891, 900 (Pa. Super. 2018) (citations omitted).

Here, in its 1925(a) opinion, the trial court reiterated its basis for denying Appellant's suppression motion, explaining that

[t]he Commonwealth bears the burden to prove by a preponderance of the evidence that all police activity is lawful. This court does find that at least the beginning of the identification procedure was police activity, and the fact that Officer Davis [(Ms. Davis)] is the [victim's] mother does not undo that fact.

This [c]ourt finds no evidence that the identification procedure was suggestive either on the part of [Ms.] Davis or the two detectives later on. This [c]ourt specifically finds also that defendant Rafiq was, specifically, Rafiq Purnell, was known to the [victim,] which also factors into this analysis.

This [c]ourt finds specifically that each of the two defendants were identified from multiple photos shown at each identification procedure with no suggestions. If there had been, *arguendo*, a suggestive identification procedure, this [c]ourt finds that there is more than ample basis for any subsequent identification of each of the two defendants based on the [victim's] ability to observe these two defendants during the assault given multiple factors that include, but are not limited to, the lighting, the duration, their physical proximity, et cetera. Therefore, the motion to suppress is denied.

- 8 -

Trial Ct. Op. at 6-7 (citing to N.T. Supp. Hr'g, 9/25/17, at 97-99).

Based on our review, we conclude that the trial court thoroughly addressed this issue. **See** Trial Ct. Op. at 6-7. Moreover, we discern no error in the trial court's factual determinations or legal conclusions. **See Wells**, 916 A.2d at 1194-95. We therefore adopt the trial court's analysis as our own.

In his next issue, Appellant argues that the trial court erred by limiting the scope of cross-examination in two separate instances. Appellant's Brief at 14. First, Appellant argues that the trial court erred by limiting his cross-examination of the victim at the suppression hearing. **Id.** at 16. He asserts that he should have been permitted to ask the victim additional questions regarding the number of times he was struck during the assault. **Id.** He contends that this line of questioning was relevant to (1) whether the victim's ability to observe the assailants was altered, and (2) the victim's credibility. **Id.** at 16-17.

Appellant also claims that the trial court improperly limited his cross-examination of Ms. Davis, the victim's mother, at trial. **Id.** at 17. He argues that his "confrontation clause rights were violated[,] as trial counsel was not permitted to subject the identification at trial to a proper amount of scrutiny." **Id.** He asserts that his questions were relevant based on the discrepancies between the victim's statement to police and the testimony given by the victim and Ms. Davis at trial. **Id.** at 18.

The following principles govern our review. The right to cross-examine witnesses, although fundamental, is not absolute. **Commonwealth v. Rosser**, 135 A.3d 1077, 1088 (Pa. Super. 2016) (*en banc*). "A trial court has discretion to determine both the scope and the permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." **Commonwealth v. Briggs**, 12 A.3d 291, 335 (Pa. 2011) (quotation marks and citations omitted).

The Confrontation Clause of the Sixth Amendment of the United States Constitution provides a defendant with a constitutional right "to conduct cross-examination that reveals any motive that a witness may have to testify falsely . . ." **Commonwealth v. Bozyk**, 987 A.2d 753, 756 (Pa. Super. 2009). However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, and prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." **Id.** (citation omitted).

Here, the trial court addressed Appellant's claim relating to the victim as follows:

> [A]dditional examination on this area was unnecessary. Appellant's claim of error ignores the fact that his counsel was given ample opportunity to examine the [victim] on matters relating to the motion to suppress identification: opportunity to observe and circumstances of the out-of-court identification. Indeed, defense counsel's examination of the witness was extensive. . . .

- 10 -

. . . . Here, the scope of the cross-examination was appropriate, and the [c]ourt's efforts to confine the examination to matters relevant to the motion to suppress was appropriate.

Trial Ct. Op. at 7.

As to Appellant's claim regarding Ms. Davis, the trial court explained:

During the cross-examination of Ms. Davis, counsel for Appellant attempted to get into extraneous matters, not relevant to the issues before the jury, including:

- Whether the wearing of her police uniform at trial was in violation of a police department directive;

- Why she spoke to her lieutenant about the incident and whether she informed any other supervisors about her efforts to identify the perpetrators;

- Her prior arrests and use of Facebook photos in other cases;

- Following department procedures in discussing the identification issues with her son, the complainant;

- Whether her showing the Facebook photos to her son was the best way to proceed;

Ms. Davis was trying to identify the perpetrators of the crimes against her son in her capacity as a mother. She was not the assigned police investigator and was not acting in her official capacity. The issues of police directives, supervisory officers and prior arrests and investigations simply were not relevant to the identification issues presented here. For this reason the cross-examination was properly limited.

Trial Ct. Op. at 8 (formatting altered) (record citations omitted).

Based on our review, we conclude that the trial court thoroughly addressed both of Appellant's issues relating to cross-examination. ***See id.*** at 7-8. Moreover, we discern no abuse of discretion or error of law by the trial

court. **See Briggs**, 12 A.3d at 335. We therefore adopt the trial court's analysis as our own.

Appellant next argues that the trial court erred in denying his motion for a mistrial because the Commonwealth allegedly violated Pa.R.Crim.P. 573(B)(1)(d). Appellant's Brief at 18. He asserts that the Commonwealth withheld mandatory discovery when it failed to provide a copy of the email that Ms. Davis sent to the detectives. **Id.** Appellant concludes that "[t]he denial of mistrial or providing any other remedy was an abuse of discretion." **Id.**

Rule 573 of the Pennsylvania Rules of Criminal Procedure governs pretrial discovery in criminal cases and provides, in pertinent part, as follows:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

\* \* \*

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

- 12 -

\*     \*     \*

> **(E) Remedy**.  If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(B)(1)(a), (d), (1)(E).  Additionally,

> [w]henever the rule makes reference to the term "identification," or "in-person identification," it is understood that such terms are intended to refer to all forms of identifying a defendant by means of the defendant's person being in some way exhibited to a witness for the purpose of an identification: *e.g.*, a line-up, stand-up, show-up, one-on-one confrontation, one-way mirror, etc.  The purpose of this provision is to make possible the assertion of a rational basis for a claim of improper identification based upon ***Stovall v. Denno***, 388 U.S. 293 (1967), and ***United States v. Wade***, 388 U.S. 218 (1967).

Pa.R.Crim.P. 573 *cmt*.

> If the Commonwealth violates the disclosure requirements of Rule 573,
>
> the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances.  The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. . . .  A defendant seeking relief from a discovery violation must demonstrate prejudice.  A violation of discovery "does not automatically entitle [a defendant] to a new trial."  Rather, [a defendant] must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure.

***Commonwealth v. Brown***, 200 A.3d 986, 993 (Pa. Super. 2018) (citations omitted).

- 13 -

Here, the trial court addressed Appellant's claim as follows:

Appellant asserts that there was a discovery violation because the emails that Ms. Davis used . . . to transmit to the assigned detectives the Facebook photos she showed to her son were not provided in discovery, although the photographs were produced.

There was no dispute that Ms. Davis provided the photos to the assigned detectives. Appellant offered no basis for believing that there was anything about the transmittal emails that was in any way relevant to the defense of the case, or that the transmittal emails were the type of disclosure contemplated by Pa.R.Crim.P. 573(B).

There was no discovery violation, and if there were some minor technical violation in [the Commonwealth's] failure to produce the transmittal emails, Appellant suffered no prejudice and a mistrial was not warranted.

Trial Ct. Op. at 8-9.

Based on our review, we conclude that the trial court thoroughly addressed this issue. *See id.* Therefore, we adopt the trial court's analysis as our own.

Appellant's remaining claims relate to the trial court's refusal to give requested jury instructions. It is well settled that this Court will "reverse a [trial] court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. J. Baker*, 24 A.3d 1006, 1022 (Pa. Super. 2011) (citation omitted). When a trial court refuses to deliver a specific jury instruction, "it is the function of this Court to determine whether the record supports the trial court's decision." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1257 (Pa. Super. 2014) (*en banc*) (citation omitted). "[T]he relevant inquiry for this Court . . . is whether such charge was warranted by

the evidence in the case." ***Commonwealth v. M. Baker***, 963 A.2d 495, 506 (Pa. Super. 2008) (citation omitted).

Appellant first argues that he was entitled to an instruction on the failure to produce documents or other tangible evidence at trial. Appellant's Brief at 21. Appellant's claim is based on his earlier assertion that the Commonwealth committed a discovery violation by failing to provide copies of the email that Ms. Davis sent to the investigating detectives. ***Id.*** at 22-23.

According to Pennsylvania Suggested Standard Criminal Jury Instruction 3.21(B)(2), "the jury is allowed to draw a common-sense inference that [an] item would have been evidence unfavorable to that party" when "there is no satisfactory explanation for [that] party's failure to produce an item," and (1) "the item is available to that party and not to the other"; (2) "it appears the item contains or shows special information material to the issue"; and (3) "the item would not be merely cumulative evidence." Pa.S.S.C.J.I. 3.21(B).

Here, the trial court addressed Appellant's claim as follows:

> Appellant's . . . . complaint apparently revisits the emails by which Ms. Davis transmitted the Facebook photos of the Appellant and the co-defendant to the assigned detectives. There was nothing relevant about those emails, and it would have been confusing to the jury to suggest that the failure to produce something irrelevant somehow gave rise to a negative inference. Accordingly, like the mistrial motion, the request for an instruction pursuant to SSJI 3.21B was properly denied.

Trial Ct. Op. at 9.

Based on our review, we conclude that the trial court thoroughly addressed this issue. ***See id.*** Moreover, we discern no abuse of discretion or

error of law by the trial court. *See J. Baker*, 24 A.3d at 1022. We therefore adopt the trial court's analysis as our own.

Appellant also argues that he was entitled to *Kloiber* charge because the accuracy of the victim's identification of Appellant "was in doubt." Appellant's Brief at 26. Appellant asserts that the victim "had never met Appellant before" and that the victim's ability to observe Appellant may have been compromised during the assault. *Id.* He further contends that there were inconsistencies regarding the timeline of the victim's out-of-court identification. *Id.* at 27. Appellant concludes that "[t]his clearly casts doubt as to whether an earlier identification was attempted and possibly failed." *Id.* at 27.

In *Kloiber*, we explained:

> [W]here the witness is not in a position to clearly observe the assailant or he is not positive as to identity, or his positive statements as to identity are weakened by qualification, or by the failure to identify the defendant on one or more prior occasions, the accuracy of the identifications is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

*Kloiber*, 106 A.2d at 826-27.

However, "[w]here the opportunity for positive identification is good and the . . . [witness's] identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution." *Id.* at 826 (citations omitted).

More recently, our Supreme Court explained that "[a] defendant is entitled to a ***Kloiber*** instruction only when a witness: (1) was not in a position to clearly observe the defendant, or is not positive as to identity; (2) equivocated on the identification; or (3) failed to identify the defendant on prior occasions." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1280-81 (Pa. 2016) (citation omitted).

Here, the trial court addressed Appellant's claim as follows:

> The complaint regarding the [c]ourt's refusal to give an alternate identification instruction is equally unavailing. As the subcommittee note to SSJI 4.07B makes clear, the instruction is only "appropriate where an eyewitness did not have a clear opportunity to view a defendant, equivocated on the identification of the defendant, or had some difficulty making an identification in the past." Here there was no evidentiary basis for giving the instruction. Instead, the [c]ourt instructed the jury pursuant to SSJI 4.07A, which was the instruction appropriate to the facts of this case.

Trial Ct. Op. at 10.

Based on our review, we conclude that the trial court thoroughly addressed this issue. ***See id.*** Moreover, we discern no abuse of discretion or error of law by the trial court. ***See J. Baker***, 24 A.3d at 1022. We therefore adopt the trial court's analysis as our own.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/19